WIGGINTON, Chief Judge.
Appellants brought this action in the Circuit Court of Bradford County by which they challenged the 1965 ad valorem tax assessment levied against their timberlands. From an adverse final judgment sustaining the validity of the assessment, this appeal is taken.
Appellants are the owners of approximately 36,000 acres of timberlands in Bradford County. The county tax assessor relied largely upon the market value approach as agricultural lands in arriving at the value of appellants’ land for tax assessment purposes, although consideration was given by him to the income factor specified by the statute as one of the seven criteria to be considered in evaluating property for tax purposes. The tax assessor’s valuation was supported at the trial by evidence of comparable sales in the county of other timberlands, and the testimony of a witness who arrived at his opinion as to the value of the land by adding to his
*349 estimate of the value of the hare land the value of the timber growing thereon.
It is appellants’ position that the sole and exclusive method authorized by law for evaluating timberlands is the capitalized net income method as specified in the formula promulgated by the State Comptroller and set forth in the official 1959 tax assessor’s manual. Because of the tax assessor’s admitted failure to follow the evaluation method relied on by appellants, they contend that he acted contrary to the requirements of law which resulted in a valuation of their property that is arbitrary, discriminatory, excessive, and illegal.
The statute relating to the assessment of land and timber provides that the tax assessor shall ascertain by personal inspection the value of timberland, and assess it at a value based upon the provisions of F.S. Section 193.021, F.S.A.[1]
The statute further provides that all lands being used for agricultural purposes, including lands used in bona fide forestry operations, shall be assessed as agricultural lands upon an acreage basis.[2]
F.S. Section 193.021, F.S.A., of the statutes dealing with the method of assessing real property for ad valorem tax purposes provides that the county assessor shall make his assessment in such manner as to secure a just valuation as required by Section 1, Article IX of the State Constitution, F.S.A., and that in arriving at a just valuation the assessor shall take into consideration the following factors: (1) the present cash value of the property; (2) the highest and best use to which the property can be expected to be put in the immediate future; and the present use of the property; (3) the location of the property; (4) the quantity or size of the property; (5) the cost of the property and the present replacement value of any improvements thereon; (6) the condition of the property; and, (7) the income from the property.
In defining what constitutes “just valuation” as required by Section 1, Article IX of the State Constitution, within the meaning of that term as set forth in F.S. Section 193.021, F.S.A., referred to above, our Supreme Court in the case of Walter v. Schuler[3] said:
“ * * * ‘Fair market value’ and ‘just valuation’ should be declared ‘legally synonymous’ and * * * may be established by the classic formula that it is the amount a ‘purchaser willing but not obliged to buy, would pay to one willing but not obliged to sell.’ * * * ”
The foregoing is the test which the tax assessors of this state are mandated by the Walter decision to apply in evaluating property for tax assessment purposes, observing in so doing the seven criteria or guideposts specified in Section F.S. 193.021, F.S.A., referred to above. This is the test and formula followed by the tax assessor in the case sub judice that resulted in the valuation of appellants’ land which appellants challenge by this appeal.
In addition to the foregoing, our statute provides that the Comptroller shall establish and promulgate standard measures of value not inconsistent with those standards provided by law to be used by tax assessors in arriving at assessments of all property, which standard measures of value shall be deemed and held prima facie to be the standard measures of just valuation contemplated by the Constitution of this state, and tax assessors shall follow and apply such standard measures of value in arriving at assessments of all property.[4]
Pursuant to the foregoing statutory authority, the Comptroller promulgated a standard measure of value to be used by tax assessors in arriving at the assessment *350 of timberlands which is contained in the official 1959 tax assessor’s manual and is as follows, to wit:
“The income capitalization approach to determining value is based on the annual net income return on any given farm. The gross income of a farm is estimated and the expenses of farming are deducted. The resulting net income is then capitalized to obtain a reasonably accurate value of the property. * * * The income capitalization method of determining land values, when reduced to its simplest factors, is basically an easy process. * * * The rate of capitalization can best be determined by using local mortgage interest rates or loan interest rates. The net income data does not have to be for a single year; in fact, it is better to calculate an average of net income over a period of time, up to ten years, in order to produce an equitable assessment. The latter method will thus include bad as well as good income years. In order to determine operational expenses which are deducted from gross profit, the following expenses should be considered by the assessor: * *
It is not our province to pass upon the wisdom or folly, the soundness or impracticability, of the capitalized net income formula promulgated by the Comptroller. It is sufficient to observe that the factors to be employed in arriving at a valuation under this formula, even as amended in 1964 and made effective for 1968 and subsequent tax years, are wholly theoretical and to a large extent based upon area averages not necessarily having any direct relationship to the particular land under consideration by the tax assessor. The formula requires the lumping together of all timberlands owned by one taxpayer and spreading over his entire ownership an average per acre value. This method permits an uncut section of heavily timbered land to carry the same taxable value as a comparable section of cut over land.
In construing the statute empowering the Comptroller, subject to the approval of the Budget Commission, to promulgate standard measures of value for assessing real property, the Supreme Court in Burns v. Butseher[5] said:
“We do not construe the statute as an attempt at usurpation by the Comptroller and Budget Board of the duties of tax assessors or materially to interfere with their discretion in discharging their duties for as we said in the Walter case there is much room for the play of their judgment as they 'receive, weigh and evaluate varying information * * * from different sources * * *.’
ifc ‡ ife ‡ # *
“We are aware of no infirmity in Sec. 192.31 or, for that matter, in the whole plan which obviously was designed to effectuate uniformity and equality in taxation amongst all the counties of the State. But it is not restricted to such widespread application. * * * ”
In the recent case of St. Joe Paper Company v. Brown[6] the owner of timberlands challenged the legality of the tax assessment made by the tax assessor of Leon County against its lands on the ground that the fair market value method was used in evaluating its property rather than the income valuation method as testified to by its experts. In St. Joe Paper Company the landowner took the position that the income valuation approach was the most accurate and generally accepted method used in evaluating timberlands for tax assessment purposes, and because of the tax assessor’s failure to follow such method the valuations fixed by him were excessive, confiscatory, and illegal, and should be set aside. In rejecting this contention, this court, in an opinion by Judge Spector, said:
“The income criterion relied upon exclusively by appellants is not only a proper measure of value of agricultural lands, but when taken together with the other *351 enumerated criteria, as it must be, it should be given great weight because of its peculiarly influencing effect as to the value of agricultural lands. But neither the statutes nor the case decisions state that it is the only criterion to be followed by the assessor in arriving at his assessment. All of the enumerated criteria should be taken into account, not just one. It well may be that as to a given parcel of property, one or more of the enumerated criteria may not be susceptible of application. In such event, the evidence presented to be weighed by the trier of fact must show its inappropriateness as a measure of value.
“Inasmuch as the appellant confined its evidence of value of the forestry lands to the income method only and chose not to proceed with evidence respecting the other criteria also, as is required under the Supreme Court’s decision in the Markham case, supra, [Markham v. Blount, Fla., 175 So.2d 526] it is our view that the trial court correctly held that appellant had failed to make out a prima facie case as to illegal excessiveness of the assessment on its forestry lands.”
In the case of Orange State Oil Co. v. Jacksonville Expressway Authority[7] this court held in an eminent domain proceeding that a jury charged with the duty of determining the just valuation of land condemned was privileged to hear and consider evidence relating to the value of the land as established by the application of any legally recognized and accepted method of evaluation, and should not be confined solely to the single method espoused by the condemning authority. If such a rule of law is sound as applied to the determination of just valuation of land in an eminent domain proceeding, then it is equally sound as applied to the determination of just valuation of land for tax assessment purposes.
It is our view that the income capitalization method of arriving at the value of timberlands for tax purposes in accordance with the formula promulgated by the State Comptroller should be applied by tax assessors, and the resulting valuation considered as a permissible approach in evaluating property for taxation. There is, however, nothing in this regulation which either directly or inferentially constitutes it as the sole and exclusive standard measure of value to be used in the assessment of timberlands to the exclusion of all other methods recognized or authorized by law. We therefore conclude that upon a consideration of the above-cited statutes relating to taxation of timberlands, the tax assessors of the state are statutorily directed to use the capitalization of net income method promulgated by the State Comptroller, along with the fair market value method and any other legally recognized and accepted methods in arriving at the just valuation to be placed on timberlands as agricultural lands, the ultimate value adopted to be in recognition of the criteria enumerated in F.S. section 193.021, F.S.A.
It was up'on the basis that standard measures of value promulgated by the Comptroller are not exclusive that the Supreme Court in Burns v. Butscher, supra, held that the statute conferring such authority on the Comptroller did not usurp the constitutional right, power, and privilege of the county tax assessors to exercise their discretion in discharging their duties under the law because there is much room for the play of their [tax assessors] judgment as they receive, weigh, and evaluate varying information from different sources in arriving at their taxable values.
It is axiomatic that regulations of state officers or agencies, even when promulgated pursuant to the authority of law, may not be accorded the legal effect of repealing valid statutes enacted by the legislature. Furthermore, F.S. Section 192.31, F.S.A., which authorizes promulgation by the State Comptroller of standard measures of value specifically provides that such *352 standards may not be inconsistent with those standards otherwise provided by law. To hold the capitalized income method promulgated by the Comptroller is the exclusive method to which tax assessors are confined in evaluating timberlands for tax purposes would be wholly inconsistent with the provisions of F.S. Sections 193.021 and 193.22, F.S.A. These statutes specify the method to be followed by tax assessors in assessing property for tax purposes and require the assessors to take into consideration seven enumerated factors in arriving at the just valuation to be placed upon both land and timber growing thereon, which factors collectively constitute a measure of value which may not be superseded or withdrawn by an inconsistent regulation adopted by the Comptroller. Such a holding would also be inconsistent with the constitutional mandate requiring a distribution of the tax burden on the basis of “just valuation” as that term has been defined by the Supreme Court in Walter v. Schuler, supra.
Appellants insist that the capitalized income method of evaluating timberlands promulgated by the Comptroller embodies and gives full recognition to the seven factors or criteria enumerated in F.S. Section 193.021, F.S.A. Based upon this premise they insist that the Comptroller’s standard measure of value on the capitalized income approach is not inconsistent with the standards provided by the criteria enumerated in F.S. Section 193.021, F.S.A., or by any other provision of law. Although this argument has merit, the same can be said of the fair market value method of evaluating timberlands based upon acquisition costs or sale price of comparable lands paid on the open market within permissible time limits. All such approaches to full value embrace the willing seller, willing buyer concept approved by the Supreme Court in Walter v. Schuler, supra. We adhere to the view that the capitalized income method is only one of several methods which the county tax assessors are authorized by law to consider in arriving at the just valuation of property for tax purposes, and does not constitute the exclusive method as contended for by appellants. If timberlands are to be set apart in a special category and evaluated for tax purposes only by the application of an arbitrary and theoretical formula on a capitalization of net income basis, then such policy must be clearly and unequivocally ordained by the state legislature, and not by regulations of the State Comptroller or judicial edict of the courts.
From the presentation made by appellants regarding the economic factors which vitally affect the timber industry, it well may be that tax relief in some form must be granted to this industry if it is to survive. So long, however, as the method of evaluating timberlands for tax purposes followed by the tax assessor does not violate constitutional or statutory requirements, the assessment must be sustained. Any relief from the tax burden which this industry is bearing must come from the legislative and not from the judicial branch of government.
We have carefully considered the remaining points on appeal urged by appellants for reversal but find them to be without substantial merit.
For the foregoing reasons the judgment appealed herein is affirmed.
SPECTOR, J., concurs.
JOHNSON, J., dissents.

. F.S. § 193.22, F.S.A.

. F.S. § 193.11(3), F.S.A.

. Walter v. Schuler (Fla.1965), 176 So. 2d 81, 85, 86.

. F.S. § 192.31(1), F.S.A.

. Burns v. Butscher (Fla.1966), 187 So. 2d 594, 596.

. St. Joe Paper Company v. Brown (Fla. App.1968), 210 So.2d 725, 728.

. Orange State Oil Co. v. Jacksonville Expressway Authority (Fla.App.1969), 110 So.2d 687.