223 So.2d 305 (1969)
Luther G. POWELL and May F. Powell, His Wife; John Powell and Luther G. Powell, As Trustees under Testamentary Trust Established by the Last Will and Testament of Luther C. Powell, Deceased, and Container Corporation of America, a Delaware Corporation, Petitioners,
v.
J.R. KELLY As Tax Collector of Bradford County, Florida, and Fred O. Dickinson, Jr., As Comptroller of the State of Florida, Respondents.
No. 37994.
Supreme Court of Florida.
May 28, 1969.
*306 Edward McCarthy, Jr., of Bryant, Freeman, Richardson & Watson, Jacksonville, for petitioners.
Theron A. Yawn, Jr., Starke, for respondents.
John F. Corrigan, Jacksonville, John E. Norris, Lake City, and William H. Adams, III, Jacksonville, as amicus curiae.
ADKINS, Justice.
This cause is here on petition for writ of certiorari supported by certificate of the District Court of Appeal, First District, that its decision reported in 214 So.2d 347 is one which involves a question of great public interest. See § 4(2), Article V, Fla. Const. F.S.A.
Petitioners, plaintiffs below, challenged the valuation for ad valorem tax purposes of their timberlands as made by the Bradford County tax assessor for the years 1965, 1966 and 1967. A separate complaint was filed for each year. The 1965 case was tried before the Circuit Court and the 1966 and 1967 cases were decided on motions for summary judgment. The cases were consolidated on appeal to the First District Court of Appeal.
Plaintiffs alleged that the tax assessor arbitrarily and illegally assessed the timberlands in excess of just value for agricultural purposes as provided by Fla. Stat., §§ 193.021 and 193.11(3), F.S.A. It is conceded that plaintiffs' lands were agricultural lands and entitled to be assessed as such.
The plaintiffs paid all taxes owed on the lands based upon the value of the timberlands as submitted by the plaintiffs.
The tax assessor made the challenged assessments on what he termed "comparable sales" of timberlands in the county. Plaintiffs contend that the "capitalized net income method" of valuing timberlands as set forth in the official 1959 tax assessors' Manual and the 1964 revision thereof should be used in making the assessments. Plaintiffs further contend that the assessor had the burden of justifying the propriety of the assessment because of his failure to follow the 1959 tax assessors' Manual.
The Manual of 1959 was promulgated by the Comptroller under the authority of Fla. Stat., § 192.31, F.S.A. This Manual was approved by the Budget Commission as required by the Statute. Although the 1959 Manual relating to rural land assessment states that "the capitalization of income method appears to be the most accurate," no standard measures of value are indicated.
*307 The purpose of Fla. Stat., § 192.31, F.S.A. was to delegate to the Comptroller the power to control the manner in which the duties of the tax assessor were to be performed. See Burns v. Butscher, 187 So.2d 594 (Fla. 1966), wherein it is stated that the exercise of unbridled discretion by sixty-seven tax assessors without their being anchored to any master plan would result in an imbalance.
By the terms of the Statute (§ 192.31) the Comptroller is mandated to establish and promulgate "standard measures of values not inconsistent with those standards provided by law to be used by tax assessors in all counties."
These "standard measures of values" are, by the terms of this Statute, deemed prima facie to be the standard measures of just valuation and the burden is upon any assessor refusing to follow such standard to justify his assessments by a preponderance of the evidence. The provisions of the 1959 Manual are set forth in the District Court of Appeal opinion (214 So.2d 347, 350). We agree with the Trial Court that no "standard measures of value" for timberlands as contemplated by the Statute are indicated in the 1959 Manual. The method of appraisal presented by plaintiffs at the trial was admissible in evidence on the question of fair market value or just value, but such evidence was not entitled to any greater weight by virtue of the provisions of the 1959 Manual.
The lack of specific "standard measures of value" rendered the provisions of the 1959 Manual ineffective insofar as requiring the assessor to justify his assessments of timberlands by a preponderance of the evidence.
In 1963 a tentative revision of the Manual was published, but the timber interest took exception to the woodland section and that section was revised in 1964. At the time of the assessments in these cases the 1964 revision had not been approved by the State Budget Commission. Therefore, the only Manual applicable to these suits is the one promulgated in 1959 which, as explained above, was defective. The provisions of the 1964 revision are not applicable to these cases and the effect of the 1964 revision after approval by the Budget Commission is not being considered.
The method of appraisal of timberlands contained in the 1964 Manual could be followed by plaintiffs in presenting evidence as to fair market value or just value. However, this evidence would not be entitled to any greater weight by virtue of being the method included in the 1964 revision. The burden placed upon the assessor for refusing to follow such standards is not effective until the standard measures of values are approved in accordance with the statutory provision.
The fixing of a valuation on property by a tax assessor for the purpose of taxation is an administrative act involving the exercise of administrative discretion, and the Court will not in general control that discretion unless it is illegally or fraudulently exercised or exerted in such manner or under such circumstances as will amount in law to a fraud. A situation might be presented for judicial interference where specific assessment is so obviously and flagrantly excessive as to impute clearly to the assessor an intention to discriminate arbitrarily against the taxpayer; or where there appears prejudicial or material error in matter of law, independent of the exercise of a discretion as to value. But mere excessive valuation, resulting solely from inadvertence or mistaken judgment, and unaffected by any element of illegality in matter of law, or intentional or other abuse of authority, or fraud, express or implied, will not suffice as a ground of equitable jurisdiction. City of Tampa v. Palmer, 89 Fla. 514, 105 So. 115.
While the assessor is accorded a range of discretion in determining valuations for the purpose of taxation when the officer proceeds in accordance with and substantially complies with the requirement *308 of law designated to ascertain such values, yet, if the steps required to be taken in making valuations are not in fact and in good faith actually taken, and the valuations are shown to be essentially unjust or unequal abstractly or relatively, the assessment is invalid. Graham v. City of West Tampa, 71 Fla. 605, 71 So. 926 (1916); Coombes v. City of Coral Gables, 124 Fla. 374, 168 So. 524 (1936). See 23 F.L.P., Taxation, § 238. The prima facie correctness of the assessments, to be overcome, must be affirmatively assailed by appropriate and sufficient allegations and proofs, to the exclusion of every reasonable hypothesis of legal assessment. See Folsom v. Bank of Greenwood, 97 Fla. 426, 120 So. 317; Harbond, Inc. v. Anderson (Fla.App. 2d Dist. 1961), 134 So.2d 816.
The discretionary authority of the tax assessor has decreased during the past ten years. The decision in Tyson v. Lanier (Fla. 1963) 156 So.2d 833 upholding the Statute (§ 193.11(3)) requiring lands used for agricultural purposes to be assessed as agricultural lands on an acreage basis, limited the discretion of the tax assessor.
In Walter v. Schuler (Fla. 1965) 176 So.2d 81, the Court determined that "fair market value" and "just valuation" were legally synonymous and may be established by the classic formula that it is the amount a "purchaser willing but not obliged to buy, would pay to one willing but not obliged to sell." In its opinion the Court said:
"If assessors will apply that test and in doing so observe the seven guideposts in Sec. 193.021, justness should be secured to the taxpayer and the tangle that has developed should be unraveled."
In Lanier v. Overstreet (Fla. 1965) 175 So.2d 521, the Court once again upheld the validity of Fla. Stat., § 191.11(3), F.S.A., and limited the discretion of the tax assessor. In discussing Fla. Stat., § 193.021(2), F.S.A., the Court held that the tax assessor should consider the use to which the property "can be expected to be put in the immediate future," and not the potential uses to which the property is reasonably susceptible and to which it might possibly be put in some future tax year.
In Markham v. Blount (Fla. 1965) 175 So.2d 526, this Court approved and affirmed the following language in the declaratory decree of the trial judge:
"The court further finds, determines and declares that there is little, if any, difference in law between `true cash value,' `full cash value,' `just value' and words of like or similar import; * * * that insofar as Section 193.11(3), Florida Statutes, is concerned, it controls the assessment of agricultural land therein, described as lands `being used for bona fide farming, pasture, grove or forestry operations,' within the purview of the opinion of the Supreme Court of Florida in the case of Tyson vs. Lanier, Fla. 1963, 156 So.2d 833, and specifically means that the just valuation of such lands is to be determined from their bona fide use as such farming, pasture, grove or forestry operations, as contemplated by Subsection 3 of Section 193.11, Florida Statutes, and not their value for collateral and other unlimited purposes, not of an agricultural nature. In reading the factors of `just valuation' prescribed by Section 193.021 for agricultural property, the agricultural factor must be taken into account as the only factor in each instance, concerning agricultural land. * * * The Court finds, determines and declares that it does not matter if the value of a specific piece of agricultural property would be higher if assessed in accordance with the criteria provided in Section 193.021 only, but the Plaintiff must nevertheless assess agricultural lands at only their value for agricultural use, and must take no other factors into consideration."
In this opinion the Court harmonized the various statutes and opinions for the benefit of the harried tax assessor.
See also "Recent Developments in Ad Valorem Taxation" by James S. Wershow, *309 20 Fla.Law Review 1, et seq. (Summer 1967).
The appraisal of real estate is an art, not a science. There are various methods of approach in determining the market value of real estate, each approach involving the use of various guidelines. Although the use of such guidelines may be mandatory in appraisal work, their application to various situations calls upon the exercise of judgment. So it is that any standard measure of value promulgated by the State Comptroller would not destroy the right of the tax assessor to exercise his discretion or judgment in reaching the ultimate conclusion of just value. The standard measure of value would direct the tax assessor to use a certain approach, but would not necessarily bind or determine the "just value" or "market value" of the property. The standard measure of value when properly determined may be "science," but the ultimate determination of just value is "art."
In any event the 1964 Manual was not effective and could not be considered by the Court in this case. That portion of the decision of the District Court of Appeal stating that the 1964 Manual represents only a permissive approach to evaluation of timberland was gratuitous and should be considered as obiter dictum.
In the instant cases the tax assessor relied largely on the market value approach in arriving at his valuations, although he did give consideration to the income factor in his effort to comply with the provisions of Fla. Stat., § 193.021, F.S.A. which contains the seven criteria to be considered by the tax assessor in making his assessments. The tax assessor considered the lands as agricultural lands in accordance with the requirements of Fla. Stat., § 193.22, F.S.A.
He proceeded in accordance with and substantially complied with the requirements of the statutes and the decisions of this Court in ascertaining values. His assessments were prima facie correct and have not been overcome by proof to the exclusion of every reasonable hypothesis of legal assessments.
The writ of certiorari issued in this case is discharged.
CARLTON and BOYD, JJ., concur.
ERVIN, C.J., concurs specially with opinion.
DREW, J., agrees to judgment.
ERVIN, Chief Justice (specially concurring):
I agree to the judgment discharging the writ on the basis of the majority opinion and decision in St. Joe Paper Company v. Brown, Fla., 223 So.2d 311.
It appears F.S. Sections 193.021 and 193.11(3), F.S.A., prescribed the assessment standards or guidelines for lands being used in bona fide forestry operations. These standards appear to cover the subject fully and to preclude administrative classification or method of assessing such lands solely according to "the capitalization of income method" suggested in the Comptroller's manual. The statutory agricultural classification of such lands appears to be as far as the Legislature desires to go in treating such lands differently from other lands for tax purposes, and operates to preclude special administrative assessment classifications or methods for assessing such lands to the exclusion of consideration of the statutory standards. F.S. Section 192.31, F.S.A., grants no authority in the Comptroller to exclude consideration by the Tax Assessor of any of the standards prescribed in F.S. Sections 193.021 and 193.11(3), F.S.A.