316 So.2d 59 (1975)
Wade H. LANIER, Jr., As Tax Assessor of Osceola County, Florida, and J. Ed Straughn, Executive Director of Revenue of the State of Florida, Appellants,
v.
WALT DISNEY WORLD CO., a Corporation, and Madeira Land Company, Inc., a Corporation, et al., Appellees.
No. 74-900.
District Court of Appeal of Florida, Fourth District.
July 11, 1975.
*60 J. Kendrick Tucker, Asst. Atty. Gen., and J.C. Sapp, Orlando, for appellant-Lanier.
Robert L. Shevin, Atty. Gen., and J. Kendrick Tucker, Asst. Atty. Gen., Tallahassee, for appellant-Straughn.
Thomas B. DeWolf of Helliwell, Melrose & DeWolf, Orlando, for appellees-Walt Disney World Co. and Madeira Land Company, Inc.
WALDEN, Judge.
We adopt the appealed final judgment, prepared by the Honorable Roger A. Barker, Circuit Judge of the Circuit Court in and for the Ninth Judicial Circuit, as the official opinion of this court:
"WALT DISNEY WORLD CO., a corporation, and MADEIRA LAND COMPANY, INC., a corporation,
Plaintiffs,
vs.
WADE H. LANIER, JR., as Tax Assessor of Osceola County, Florida; MURRAY A. BRONSON, as Tax Collector of Osceola County, Florida; and J. ED STRAUGHN, as Executive Director of the Department of Revenue, State of Florida
Defendants.

"FINAL JUDGMENT
"This is a suit attacking the 1972 ad valorem valuation of Plaintiffs' properties located in Osceola County. It is alleged the Assessor failed to comply with the essential requirements of F.S. 193.011 in arriving at `just value' as provided by Article VII, Section 4, of the Florida Constitution.
"Upon a consideration of the evidence the Court finds:
"It has jurisdiction of the subject matter and of the parties.
"In the early 1960's WALT DISNEY PRODUCTIONS, acting through the named Plaintiffs herein as subsidiary corporations, acquired approximately 27,000 acres of contiguous lands located in Orange and Osceola Counties; approximately 10,300 acres of which are in Osceola County.
"A master plan for the development of the 27,000 acre unit of property was prepared by WALT DISNEY PRODUCTIONS. It was anticipated that the 27,000 acre unit of property was to be developed over at least a 15-year period into a unique, total, planned environment consisting of closely interrelated recreational, industrial, residential and transportational complexes. Specifically, the plan contemplated the development and construction of an entertainment and recreational complex which included a theme park similar in concept to Disneyland in California, five hotels, each of which was to be developed pursuant to an individual theme, and other tourist facilities including a unique transportational complex; an industrial park which would be a laboratory for the development and public exposure to new products, services and facilities. The plan anticipated the *61 use of the most modern techniques and methods of construction and the development of a totally unique project.
"The development of the land in accordance with the plan was commenced in 1968 and has continued to the present date. The theme park has been constructed, two hotels have been completed, and other tourist facilities, including the first phase of the transportational complex, have been completed. All of the development so far has been in Orange County with the exception of an entrance road which connects the theme park with U.S. Route 192 in Osceola County. The vast majority of the Osceola County acreage consists of undeveloped swamp and pine-woods flatlands. There are a few areas of improved pasture land and canals with water control devices.
"The theme park, known as DISNEY WORLD, opened its doors during October, 1971. During its first year of operations there were approximately 10,700,000 paid admissions. All these millions of visitors were funneled into the theme park via U.S. Route 192 from several major arterial highways.
"The evidence further revealed clearly and unequivocally that as of January 1, 1972, the 10,300 acres located in Osceola County were being used and the immediate expected use was for the following purposes:
(1) A buffer to commercial development on U.S. Route 192.
(2) A vast water storage area of several thousand acres for flood control and conservation purposes in maintaining ... environment and ecological conditions and features in their natural state.
(3) As a psychological mind conditioner for the millions of visitors to the theme park.
"The Disney imagineers are of the opinion that as a visitor approaches the theme park our God-given wild, undeveloped swamps and piney flatwoods are conducive in establishing a proper frame of mind by one to enter into and thoroughly enjoy a delightful fantasy-land of make-believe for children as well as grown-ups.
"Ever since the announcement of the plans for DISNEY WORLD Osceola County, as well as all the other counties of Central Florida, have experienced an influx of land speculators and developers. Again it is `boom time' in Central Florida with all its attendant growth problems and tax problems. This is nothing new for this state. If we are to avoid the `bust' which so often follows the `land boom' our tax assessors must strictly adhere to the tax laws in every respect insofar as humanly possible.
"The evidence further reveals that upon the building of U.S. Route 192 from its interchange with the Sunshine Parkway on the east and U.S. Route 27 on the west land speculation became quite prevalent along U.S. Route 192. Small plots of land sold for as much as $150,000,00 per acre or more. The county zoning for all the lands adjacent to the Disney tract was zoned agricultural. However, it appears that upon the actual development of the land for a tourist-oriented use the zoning for that particular parcel was changed accordingly by the Osceola County authorities, leaving the adjacent undeveloped parcels with the agricultural classification.
"The evidence further reveals the history of the assessed value of the Disney lands, to-wit:

 YEAR VALUATION
 1967 $ 526,655.00
 1968 1,106,730.00
 1969 1,106,730.00
 1970 2,280,112.00
 1971 2,324,202.00
 1972 15,172,850.00

"The art of appraising the fair market value of real estate is not an exact *62 science. For this reason our Legislature has laid down certain factors in F.S. 193.011 for the assessor to follow in arriving at `just value' or `fair market value.' Our Supreme Court and Appellate Courts in their recent pronouncements concerning F.S. 193.011 have clearly indicated that the assessor must consider each of the factors set forth in the law, and if he fails to do so his assessed values must be set aside when proper allegations and proof of such facts are presented to the Court.[1]
"Plaintiffs allege the assessor failed to consider two of the factors, namely,
(1) the highest and best use to which the property can be expected to be put in the immediate future and the present use of the property.
(2) the quantity or size of the property.
"After carefully reviewing the evidence on these two grounds the Court finds the assessor made fundamental error in assessing the property lying adjacent to and a depth of 200 feet deep from U.S. Route 192 and along the entrance road leading into the theme park.
"The Court further finds Plaintiffs have failed to demonstrate fundamental error on the part of the assessor in assessing the remaining property on an acreage basis at the rates applied by the assessor.[2]
"F.S. 193.011 provides:
193.011 Factors to consider in deriving just valuation.  In arriving at just valuation as required under #4, Art. VII of the state constitution, the tax assessor shall take into consideration the following factors:
(1) The present cash value of the property;
(2) The highest and best use to which the property can be expected to be put in the immediate future and the present use of the property;
(3) The location of said property;
(4) The quantity or size of said property;
(5) The cost of said property and the present replacement value of any improvements thereon;
(6) The condition of said property;
(7) The income from said property; and
(8) The net proceeds of the sale of the property, as received by the seller, after deduction of all of the usual and reasonable fees and costs of the sale, including the costs and expenses of financing.
"In discussing the factors as set forth in F.S. 193.011 the assessor was of the opinion that he was not obliged under the law to give each factor equal weight. THE COURT AGREES WITH THIS INTERPRETATION PROVIDED EACH FACTOR IS FIRST CAREFULLY CONSIDERED AND SUCH WEIGHT IS GIVEN TO A FACTOR AS THE FACTS JUSTIFY. (Emphasis supplied).
"In this age of rapid population growth which in turn creates a greater diversity in the use of land we are becoming more aware of the value of long range planning for land uses. In assessing real estate at its `just value' the Assessor must consider the highest and best use to which the property can be expected to be put in the immediate future and the present use of the property. This in turn is directly influenced by the zoning, if any, that affects the property as of January 1st of the taxable year.
"The `Use' factor set forth in F.S. 193.011 is entitled to great weight in the assessment process of each parcel of land. If the assessor fails to comply with literally applying this factor to each of his assessments, then he departs from the essential requirement of the law by indulging in speculation.[3] (Emphasis supplied)
*63 "In the matter sub judice the Disney land and the other properties along U.S. Route 192 were all zoned agricultural as of January 1, 1972, except those properties where development had been commenced or completed.
"As to those vacant lands outside of the Disney property and fronting U.S. Route 192, it is clear and unequivocal that much of the lands, although zoned agricultural, were being used on the speculators' market as a commodity in land titles with no physical use of the land itself. An assessment based upon such use in arriving at `just value' is a fair one under our State Constitution. On the other hand, the bona fide physical uses of the Disney land fronting on the U.S. Route 192 and the entrance road were entirely different from the so-called comparable properties on U.S. Route 192 highway used by the assessor in assessing the Disney property. The uses by the Plaintiffs' of their properties fronting U.S. Route 192, on January 2, 1972, were consistent with the highest and best use to which the property could be expected to be put in the immediate future. The uses of the Disney highway frontage were essentially the same as all the rest of the Disney property in Osceola County. The uses were consistent with the zoning in effect as of January 1, 1972.
"IT IS THEREUPON ORDERED AND ADJUDGED the 1972 assessed values of Plaintiffs' land lying adjacent to U.S. Route 192 and the entrance road leading into the theme park assessed by the assessor on a front footage basis be, and the same are hereby set aside and held for naught.
"IT IS FURTHER ORDERED the assessor shall forthwith reassess the lands next above described in accordance with this Opinion and report the reassessed values to the Plaintiffs and this Court within thirty days from the date of His Order unless for good cause shown further time is needed by the assessor.
"IT IS FURTHER ORDERED AND ADJUDGED the 1972 assessments on a acreage basis of the remainder of Plaintiffs' land are valid. The temporary injunction heretofore entered by this Court concerning the lands upon which the Court finds to be validly assessed be, and the same is hereby dissolved, and the collection of the 1972 taxes thereon may proceed.
"The costs, including the Court Reporter's costs, are assessed against Osceola County.
"The Court reserves jurisdiction of the subject matter and of the parties to enter such other Orders as may seem meet and just.
"ORDERED at Kissimmee, Osceola County, Florida, this April 18th, 1974.
 /s/ Roger A. Barker
 CIRCUIT JUDGE

"FOOTNOTES
"[1] The proper text for measuring the validity of a tax assesor's action is set out in Powell v. Kelly [Fla.], 223 So.2d 305:
"While the assessor is accorded a range of discretion in determining valuations for the purpose of taxation when the officer proceeds in accordance with and substantially complies with the requirements of law designated to ascertain such values, yet, if the steps required to be taken in valuation are not in fact and in good faith actually taken, and the valuations are shown to be essentially unjust or unequal abstractly or relatively, the assessment is invalid.
"[2] As constitutional officers, the actions of tax assessors are clothed with a presumption of correctness. To overcome this presumption appropriate allegations and proofs excluding every reasonable hypothesis of legal assessment are necessary. Powell v. Kelly [Fla.], 223 So.2d 305. Folsom v. Bank of Greenwood [97 Fla. 426], 120 So 317. District School Board *64 of Lee County v. Askew [Fla.], 278 So.2d 272.
"[3] The statutory guidepost for the `use' factor set forth above in F.S. 193.011 has been construed by the Florida Supreme Court in Lanier v. Overstreet [Fla.], 175 So.2d 521, 524, and later re-affirmed by the 1st District Court of Appeal in Williams v. Simpson, 209 So.2d 262 263 as follows:
"By authorizing tax assessors to consider, as one of the factors in arriving at a just valuation of property, the use to which the property `can be expected to be put in the immediate future' (emphasis added) the Legislature has, under the familiar rule of expressio unius est exclusio alterius, prohibited tax assessors from considering potential uses to which the property is reasonably susceptible and to which it might possibly be put in some future tax year or, even, during the current tax year. To be considered, the use must be expected not merely potential or a reasonably susceptible type of use; it must be expected immediately, not at some vague uncertain time in the future. The reason for the legislative policy in this respect was well stated by Judge White in his scholarly dissenting opinion in Lanier v. Tyson, supra, Fla. App., 147 So.2d 365, as follows:
"`Assessed valuations of land based on estimates of its highest and best potential, as distinguished from present bona fide use, are bound to be largely conjectural; and when an assessor, contrary to legislative intent and direction, determines that land despite its present value because of its potential for some other "higher" purpose, he indulges in unwarranted speculation and does violence to the constitutional and statutory objective of just valuation. The assessor, like the courts, should operate within the record and not de hors it.'
"The same principles of law are also stated in Walter v. Shuler [Fla.], 176 So.2d 81; Homer v. Dadeland Shopping Center, Inc. [Fla.App.], 217 So.2d 844; Staninger v. Jacksonville Expressway [Fla. App.], 182 So.2d 483; 22 A.L.R.3rd, [950] 960; Harbour Club, Inc. v. Dade County [Fla.App.], 222 So.2d 428."
Affirmed.
OWEN, C.J., and CROSS, J., concur.