383 So.2d 919 (1980)
ATLANTIC INTERNATIONAL INVESTMENT CORPORATION, Appellant,
v.
John W. TURNER, Jr., Volusia County Property Appraiser and Robert D. Summers, Director of the Revenue Division of Volusia County, Florida, Appellees.
No. MM-130/T1-20.
District Court of Appeal of Florida, Fifth District.
March 26, 1980.
On Rehearing May 21, 1980.
Cynthia S. Tunnicliff, of Spector & Tunnicliff, P.A., Tallahassee, for appellant.
William M. Barr, of Raymond, Wilson, Conway, Barr, Burrows & Jester, Daytona Beach, for appellees.
SHARP, Judge.
The Atlantic International Investment Corporation appeals a judgment entered after a nonjury trial which sustained a 1977 ad valorem property tax assessment imposed by the county property appraiser on appellant's eight thousand acres of land in Volusia County known as "Cape Atlantic Estates". The appellant's development of the land as a subdivision was delayed from 1971 through 1977 by difficulties with local, state and federal agencies. The appellant argues that these development problems were not given sufficient consideration by the county tax appraiser in arriving at a "just valuation" under Section 193.011, Florida Statutes (1979).
At the trial Mr. Gary Bullard testified as an expert for the taxpayer on value and Mr. Frank DeBartolo testified as an expert for *920 the county. There was substantial conflict in their testimonies which the trial court resolved in favor of the county:
4. The Court has heard the testimony of all of the witnesses and it has carefully considered all of the testimonial and documentary evidence adduced. Substantial conflict exists between the opinions and conclusions of the plaintiff's appraisal expert, Mr. Gary Bullard, and those of Mr. Frank DeBartolo, the Property Appraiser's Chief Property Evaluator. The Court finds that the conflict in the evidence and the difference of opinion between the plaintiff's and the defendants' valuation experts, must be resolved in favor of the defendants.
The trial court also found:
... that the assessments of the subject property complied with applicable legal requirements, including those specified in Sections 193.011 and 194.011, Florida Statutes. The Property Appraiser properly considered the various valuation factors enumerated and specified in Section 193.011 Florida Statutes, and he gave due consideration to the permitting restrictions and problems which plaintiff has experienced with respect to the subject property.
We must affirm the trial judge unless the finding is manifestly unreasonable and clearly against the weight of the evidence. Dean v. Palm Beach Mall, Inc., 297 So.2d 298 (Fla. 1974); Blake v. Farrand Corp., Inc., 321 So.2d 118 (Fla. 3d DCA 1975); Walker v. Connolly, 299 So.2d 67 (Fla. 1st DCA 1974); Hill v. Coplan Pipe & Supply Co., Inc., 296 So.2d 567 (Fla. 3d DCA 1974); Dade County v. Miami Herald Publishing Co., 285 So.2d 671 (Fla. 3d DCA 1973); Alter v. Finesmith, 214 So.2d 732 (Fla. 3d DCA 1968). Reversal may also be necessary if the property assessor failed to consider one of the elements required by Section 193.011. Straughn v. Tuck, 354 So.2d 368 (Fla. 1977).
Section 193.011 sets forth a number of factors for the property appraiser's consideration in arriving at "just valuation":
(1) The present cash value of the property, which is the amount a willing purchaser would pay a willing seller, exclusive of reasonable fees and costs of purchase, in cash or the immediate equivalent thereof in a transaction at arm's length;
(2) The highest and best use to which the property can be expected to be put in the immediate future and the present use of the property, taking into consideration any applicable local or state land use regulation and considering any moratorium imposed by executive order, law, ordinance, regulation, resolution, or proclamation adopted by any governmental body or agency or the Governor when the moratorium prohibits or restricts the development or improvement of property as otherwise authorized by applicable law;
(3) The location of said property;
(4) The quantity or size of said property;
(5) The cost of said property and the present replacement value of any improvements thereon;
(6) The condition of said property;
(7) The income from said property; and
(8) The net proceeds of the sale of the property, as received by the seller, after deduction of all of the usual and reasonable fees and costs of the sale, including the costs and expenses of financing and allowance for unconventional or atypical terms of financing arrangements...
The taxpayer's expert witness, Mr. Bullard, testified that the land was worth between $150.00 to $200.00 per acre, a "nominal value." However he had no comparable sales data to support his figures. He appraised the Turnball Hammock tract adjoining the subject property on the east at $500.00 per acre, although most of that land is under water and totally unusable. The taxpayer's land contains 20 to 25 percent low land, but the balance is high, good land. Mr. Bullard also appraised the Dunn tract at $900.00 per acre. Its topography is similar to the taxpayer's land, although its access is poorer, and it has a larger percentage of low land. Mr. Bullard admitted he was not familiar with the dimensions of the *921 taxpayer's land and the ratio of its high to low lands; and he was unaware that U.S. Route 1 crossed the south part of the tract.
In contrast, Mr. DeBartolo testified with considerable knowledge about the tract itself, and recent sales of comparable tracts in the county. Like the subject land, they were raw hammock lands without any roads or drainage facilities. The highest and best use for these lands, in Mr. DeBartolo's opinion, was as rural subdivisions. The highest recent sales were at $2,500.00 per acre; and the lowest was the Dunn tract at $500.00 per acre. The Dunn sale was out of an estate, and in Mr. DeBartolo's opinion, was below market value. The "worst" lands in the county were selling at $400.00 per acre. Atlantic's tract has a relatively high percentage of "good" or "high" land in comparison with neighboring tracts. It also has good access on U.S. Route 1, and two paved county roads.
Atlantic acquired these lands in 1968 as part of a 14,000 acre tract. It divided the tract into 2 1/2 acre parcels and sold them largely to out of state purchasers. By 1972, approximately 95% of the land had been sold under unrecorded agreements for deeds and by 1975, 25% of the deeds had been paid off. Considerable mapping, surveying and engineering had been done on the tract. Mr. DeBartolo testified that he knew that the taxpayer had been unable to obtain permits from various governmental agencies to put in the roads and drainage planned for the subdivision, and that the taxpayer was obligated under the agreements for deed, to complete these improvements. Mr. DeBartolo testified that in his opinion the taxpayer's land was conservatively appraised at $700.00 per acre. Had it not been for the difficulties and delays encountered in putting in drainage and roads by the taxpayer, Mr. DeBartolo would have valued the land at $1,500.00 per acre. Because of these delays, he reduced the value to $700.00 per acre, which was close to "raw land value" even though most of the tracts had been sold as rural subdivision plots under contracts for deed.
Atlantic argues that Mr. DeBartolo failed to give sufficient weight to the taxpayer's difficulties and problems in developing the property. In appellant's view, the delays constituted a "moratorium", which prevented development and rendered the property useless and of nominal value only. But the existence of a "moratorium" is only one factor listed in Section 193.011. It should not be the sole consideration, absent any showing that the moratorium or delayed development is permanent.
The weight to be given all of the factors set forth in Section 193.011 is left to the discretion of the property appraiser. We should not disturb his opinion if he duly considered all of them. Lanier v. Walt Disney World Co., 316 So.2d 59 (Fla. 4th DCA 1975); Straughn v. Tuck, 354 So.2d 368 (Fla. 1977). Mr. DeBartolo discounted the value from $1,500.00 per acre to $700.00 per acre because of the permit problems encountered. He considered the "moratorium", but refused to allow it to reduce the appraisal to "nominal value". We find no error in his opinion, nor the manner in which he reached it.
The record supports Mr. DeBartolo's opinion that the appellant's difficulties in developing the tract have not reduced its market value to something approaching "nominal" value. Neighboring hammock tracts were selling for prices well above $700.00 per acre, and even the lowest swamp land was selling at $400.00 per acre. Further the taxpayer's development problems in this case were to some degree self-created. Without any consideration for the natural contour and topography of the land, Atlantic laid out a grid-development pattern for streets and drainage, which in the words of its own witness, was a "terrible development design." And further, it locked itself into the plan by selling the parcels in advance of completing the development or receiving needed approvals for it. Other developers of other hammock tracts might not face such a long delay because they can choose a different and perhaps better development plan. But is it fair and equitable to have the neighboring tracts *922 bear the full burden of taxation and this taxpayer escape any because of its poor planning? The mandate of "just valuation" for taxation has as one of its goals uniformity of treatment of taxpayers. Spooner v. Askew, 345 So.2d 1055 (Fla. 1976). Too great an emphasis on any one factor, like too limited a view of the highest and best use of the land could destroy that goal. See Dade County v. Miami Herald Publishing Co., 285 So.2d 671 (Fla. 3rd DCA 1973).
We find no error in the expert's determination of value, and the trial judge's findings based thereon.
The judgment appealed is AFFIRMED.
DAUKSCH, C.J., and ORFINGER, J., concur.

UPON MOTION FOR REHEARING
PER CURIAM.
It has been brought to our attention we overlooked in our written opinion, the case of Atlantic International Investment Corporation v. Turner, 381 So.2d 719 (Fla. 5th DCA 1980), which was decided by a panel of judges from our sister court, the First District Court of Appeal, with one judge dissenting. We recede from the holding in that case.
DAUKSCH, C.J., and ORFINGER and SHARP, JJ., concur.