478 So.2d 1122 (1985)
PALM BEACH DEVELOPMENT AND SALES CORP., et al., Appellants,
v.
Rebecca WALKER, As Palm Beach Property Appraiser, et al., Appellees.
No. 84-2356.
District Court of Appeal of Florida, Fourth District.
November 13, 1985.
Rehearing Denied December 18, 1985.
*1123 John R. Beranek of Klein & Beranek, P.A., and Boose, Ciklin & Martens, West Palm Beach, for appellants.
Gaylord A. Wood, Jr., Fort Lauderdale; Willa A. Fearrington, West Palm Beach, for appellee-Walker.
Robert C. Ross, West Palm Beach, for appellee-Allen C. Clark, Tax Collector.
J. Terrell Williams, Dept. of Legal Affairs, Tallahassee, for appellee-Miller, Director of the Dept. of Revenue.
DOWNEY, Judge.
This is an appeal from a final judgment upholding the Palm Beach County Property Appraiser's annual tax assessment against a large number of vacant lots owned by appellants. This suit was commenced pursuant to sections 194.171 and 194.181, Florida Statutes (1979), thus the county tax collector and State Department of Revenue were also parties defendant.
The appellants, Palm Beach Development and Sales Corporation of Florida, et al. (owners), commenced this suit against Rebecca E. Walker, Palm Beach County Property Appraiser (assessor), Alan C. Clark, Palm Beach County Tax Collector, and Randy Miller, Executive-Director of the State of Florida Department of Revenue, to invalidate the assessor's valuation of certain of the owners' property for the years 1980, 1981, 1982 and 1983.
The owners developed a large unplatted subdivision in northwestern Palm Beach County known as Palm Beach Country Estates. The property was registered with the Florida Division of Land Sales in the late 1960's and was entirely sold on agreements for deed by 1972. The Division of Land Sales registration was allowed to lapse thereafter, even though some of the contract purchasers defaulted and the property was returned to the owners. Thus, in 1980 the owners had an inventory of approximately 800 vacant lots. During 1973 Palm Beach County enacted certain subdivision regulations that required property to be platted before lots could be sold, unless the owner was exempt pursuant to the provision of the regulation. The owners filed an application for exemption in 1976, withdrew it in 1977, refiled it in 1980, and it was approved in 1981.
The disparity between the assessor's valuations for the years in question and those of the owners' experts is substantial:

 Year Assessor's valuation Owners' valuation
 1980 $6,878,317 $3,850,000
 1981 6,132,176 4,280,000
 1982 5,841,598 5,420,000
 1983 9,037,363 5,730,000

Accordingly, in 1980 the owners commenced this suit, amending their complaint to eventually pick up the ensuing years' valuations. The matter was tried before the court without a jury, resulting in a lengthy final judgment containing numerous findings of fact, among which were the following:
1. The owners do not contend the assessment of any tract taken separately exceeds just valuation for the years in question. In fact the owners' witnesses admitted that, if the appraisals were made on a tract-by-tract basis, the assessor's values *1124 do not exceed just valuation for any tract in any of the four years in question.
2. The owners were in fact exempt from the subdivision regulations although they did not have approval in hand for the years 1980-1981.
3. The owners were not diligent in pursuing approval of their exemption.
4. The assumption of owners' appraisers that owners' remaining lots could only have been purchased by one buyer in bulk is not supported by the evidence.
5. The evidence showed there were several hundred sales per year in this subdivision between members of the public rather than developer to first purchaser, thus negating the contention that the lots could only be sold to one purchaser in bulk.
6. The discount sellout method is inappropriate for use in valuing the property in this case.
7. The assessor had sufficient evidence of comparable sales from which to make appraisals of each section of the subdivision.
8. The assessor considered all of the criteria provided in section 193.011, Florida Statutes (1979).
9. Implementation of the owners' discount sellout theory would result in lower valuations on owners' property than exist on adjacent similar property owned by others.
10. The assessor appraised each tract in a section of this subdivision at the same value per acre regardless of whether it was owned by the "owners" or other members of the public, which results in equitable treatment of all property owners, whereas use of the discount sellout method would result in identical tracts being valued differently, based solely on ownership of the parcel.
On appeal the owners contend the trial court erred in refusing to find that use of the discount sellout method was the appropriate appraisal methodology to be used here because the owners' 800 or so lots could not be sold to one owner at one time. Furthermore, the owners argue that their inability to convey title because of the regulation requiring platting precluded them from selling the property, and they were attempting to get approval of their exemption but had been frustrated by governmental red tape. Finally, the owners say they were not dilatory or negligent in pursuing the exemption. Therefore, they submit the assessor was wrong in not taking the lack of exemption into account in arriving at the value of the property.
The assessor responds to these contentions and arguments by citing established authority that the methodology chosen by the assessor in appraising the value of property for ad valorem tax purposes will not be faulted if there is a reasonable hypothesis of correctness. Blake v. Xerox Corporation, 447 So.2d 1348 (Fla. 1984); Daniel v. Canterbury Towers, Inc., 462 So.2d 497 (Fla. 2d DCA 1984). The assessor points to the record, which contains substantial competent evidence that there were numerous individual lot or tract sales during these taxable years that furnished comparable sales for use in the market approach to value. The record further establishes that the methodology opted for by the owners should only be used when comparable sales are not available. In addition, the Florida Property Appraisers Manual of Instructions provided by the Department of Revenue suggests that "vacant land sale analysis is the best evidence of value where adequate sales data exists."
With regard to the contention that the owners were not diligent in perfecting their exemption from the subdivision regulation on platting, the assessor again points to the record. The evidence is that the owners were always entitled to exemption under the regulation itself. However, they did not apply therefor until 1976. They then withdrew the application and did not refile it until 1980. Granted, they were not favored with expeditious treatment by the governmental authorities, nevertheless, the court found that they were not really diligent in pursuing the matter. Other cases have mentioned self-created or personal *1125 hardship problems, such as the owners here suffered, and found they had no effect on the value of the land. Roden v. GAC Liquidating Trust, 462 So.2d 92 (Fla. 2d DCA 1985); Atlantic International Investment Corp. v. Turner, 383 So.2d 919 (Fla. 5th DCA 1980).
Perhaps the most serious contention the owners make is that the assessor did not consider all of the criteria mandated by the legislature in section 193.011, Florida Statutes (1979), and failure to do so invalidates the entire appraisal process utilized by her. The owners argue that the platting requirement constitutes a "land use" regulation under section 193.011(2), which has a direct effect on the valuation of the property. Thus, they submit that failure to consider it fatally flaws the assessor's valuation process.
We do not disagree with the thrust of the owners' contention that all of the criteria must be considered, but reject it because it is not applicable in this case. It is true that the assessor must consider the statutory factors in section 193.011 and failure to do so is a critical defect in the methodology utilized. Straughn v. Tuck, 354 So.2d 368 (Fla. 1977). However, as this court said in Vero Beach Shores, Inc. v. Nolte, 467 So.2d 1041, 1042 (Fla. 4th DCA 1985):
While all of the statutory factors must be considered in making an appraisal under the statutory scheme, they may be variously weighted by the appraiser or discarded entirely where they are not, under the circumstances, probative of present value.
There is substantial competent evidence in this record that all of the statutory factors contained in section 193.011 were considered by the assessor, but that the weight allocated to the various factors differed. This, we suggest, is entirely proper. As the court pointed out in Atlantic International Investment Corp. v. Turner:
The weight to be given all of the factors set forth in Section 193.011 is left to the discretion of the property appraiser. We should not disturb his opinion if he duly considered all of them. Lanier v. Walt Disney World Co., 316 So.2d 59 (Fla. 4th DCA 1975); Straughn v. Tuck, 354 So.2d 368 (Fla. 1977).
383 So.2d at 921. Among the enumerated factors is the highest and best use to which the property can be expected to be put in the immediate future and the present use, taking into consideration any applicable local or state land use regulations and considering any moratorium imposed when the moratorium prohibits or restricts the development or improvement of property. § 193.011(2). It is the assessor's opinion that the platting requirement involved here was not a land use regulation, nor did it constitute a moratorium. The requirement that the owner must plat the land prior to selling it was a developmental requisite preparatory to selling, and it did not affect the use of the property either prior to or after sale. Thus, in ascribing a value to this and other similar tracts, the assessor opined that the platting regulation had no effect upon the just value thereof. As the trial judge suggested, regulations personal to the owner that prohibit him from selling, such as bankruptcy, certain injunctive mandates, and platting requirements, may temporarily preclude selling the land, but they do not adversely affect the objective value of the property itself. Furthermore, it appears to be the holding of the trial court that the owners' property was always exempt from the pertinent regulation, but the owners simply failed to diligently pursue the official approval of that status. That turn of events should not create a difference in the valuation of like properties.
Accordingly, we believe the judgment appealed from is adequately supported by the record and should be affirmed.
AFFIRMED.
ANSTEAD and DELL, JJ., concur.