261 So.2d 822 (1972)
PALM CORPORATION, Petitioner,
v.
Porter W. HOMER, As County Manager, Tax Assessor and Tax Collector of Dade County, Florida, Political Subdivision of the State of Florida, et al., Respondents.
No. 40886.
Supreme Court of Florida.
April 26, 1972.
Rehearing Denied June 1, 1972.
Lucien C. Proby, Jr., and Edward A. Stern, of Pallot, Silver, Pallot, Stern, Proby & Adkins, Miami, for petitioner.
*823 Stuart Simon, Dade County Atty., and Gary S. Brooks, Asst. County Atty., for respondents.
DEKLE, Justice.
Petition for certiorari is before us in this cause asserting conflict with Walter v. Shuler, 176 So.2d 81 (Fla. 1965). There is conflict for jurisdiction here under Fla. Const. art. V, § 4, F.S.A.
Petitioner (taxpayer-property owner) seeks review of the decision of the Third District Court of Appeal at 243 So.2d 641 (1971), reversing the trial court's finding from the evidence of a valuation different from the assessment and the consequent reduction of the property owner's 1968 taxes on a shopping center in Miami Beach. The able and experienced trial judge based his determination principally upon the assessor's failure to apply all of the criteria in accordance with this Court's opinions in Walter v. Shuler, supra, and City of Tampa v. Colgan, 121 Fla. 218, 163 So. 577 (1935).
Fla. Stat. § 193.011, F.S.A., (brought forward from § 193.021) sets forth the required criteria to be considered by a tax assessor in determining a property assessment. One of these is the income from the property. This is a factor which is particularly applicable to business properties such as shopping centers; yet this important consideration was admittedly not used by the assessor in this instance. The reason given for not doing so was that the property owner refused voluntarily to submit its income from the shopping center to the assessor for his consideration.
If there are adequate data available for an assessor's use in applying the income or economic approach he should do so even though he does not have the property owner's actual income figures. These may not be available or may not be divulged for tax reasons or privilege affecting the matter. So long as the income approach is validly applied in good faith by the assessor to the best of his ability under the circumstances, e.g., as it may be generally known from related businesses or recognized appraisal formulae, then his assessment can not be invalidated just because it later develops at trial upon actual income figures being made available, that the taxpayer's information would belatedly change the result. But to refuse to consider the income criterion solely because the taxpayer declines to supply his figures, fails to comply with the statute.
The assessor's assigned reason why he did not use an income criterion was that the property owner would not furnish it unconditionally for use.[1] This alone is not sufficient. We cannot agree with his position that the income approach for assessment need not be used though required by the statute unless the property owner provides voluntarily his income figures for computation. This may be desirable, if both parties agree, in arriving at a fair assessment but there is no requirement for the property owner to make such revelation as a predicate to its consideration in line with Fla. Stat. § 193.011, F.S.A. The taxpayer may, however, suffer the consequences of unreasonably withholding such information. He can not in a later suit to change a valid assessment, benefit from his wrongful refusal by belatedly offering his income information, provided the assessor, after reasonably demanding such information and being refused, has in good faith applied such general income data as was applicable and available to him.
The assessment here, however, was primarily on a replacement cost basis less the depreciation, with the land being based upon a square foot basis, according to the tax assessor. In the light of failure by the assessor to use the very pertinent criterion of income applicable here, the trial judge *824 was well justified in finding that the assessment did not satisfy legal requirements, and in fixing a proper assessment which included consideration of the omitted income factor based upon evidence of it offered at trial.
Certiorari is accordingly granted; the District Court opinion is quashed with directions to reinstate the final judgment.
It is so ordered.
ROBERTS, C.J., and ADKINS and McCAIN, JJ., concur.
ERVIN, J., dissents with opinion.
SPECTOR, District Court Judge, dissents with opinion.
ERVIN, Justice (dissenting):
I find nothing in this case to justify the conclusion in the majority opinion that there is a conflict between the decision of the Third District Court of Appeal in this case, reported in 243 So.2d 641, and the decisions in City of Tampa v. Colgan, 121 Fla. 218, 163 So. 577, and Walter v. Schuler, Fla., 176 So.2d 81, insofar as the earlier cases hold a tax assessor is statutorily required to take into consideration the income producing factor of property in assessing it for tax purposes.
Turning to the merits and considering them irrespective of whether there is decisional conflict, I find no basis for quashing the District Court decision.
The trial judge reduced the Tax Assessor's assessment of the subject property because from the evidence introduced at the trial he believed that use of a "net income" multiplier by the taxpayer's expert, a Mr. Ridolf, in determining the value of the Petitioner's shopping center property was a "more logical and fast method" than the gross income multiplier applied by the Tax Assessor to the income evidence. However, it was admitted by Petitioner's expert the use of the latter method by the Tax Assessor in evaluating the income evidence finally submitted by Petitioner at the trial lay within his sound discretion  and this the District Court also held. This was the gist of the District Court decision  not that the factor of the property's income was never taken into consideration by the Tax Assessor, which incongruously is the basis for the majority's finding of conflict.
It is true that Section 193.021(7), F.S. 1967, (brought forward in § 193.011, F.S. 1969) provides that county assessors of taxes in assessing property shall take into consideration the factor: "(7) the income from said property ..." along with several other factors. And here it appears the Tax Assessor duly and seasonably and diligently sought to utilize the factor of income derived from Petitioner's shopping center business in assessing the center's property by requesting information from the Petitioner as to same, but was denied it by Petitioner. Such information did not enter the picture until Petitioner finally submitted it at the hearing in this litigation before the trial judge. There is every indication in the record the Assessor would have considered the income factor in making his tax assessment of the subject property had his request been granted by Petitioner. But being refused this information, he necessarily had to depend upon other criteria in arriving at his assessment value of the property.
The only way a tax assessor with reasonable certainty can comply with factor numbered (7) in making tax assessment of a particular piece of property is for the taxpayer to furnish the tax assessor the necessary income information. Yet, most inconsistently, the Petitioner argues here that failure of the Tax Assessor to consider the income factor invalidates in part the assessment even though Petitioner refused to furnish the Tax Assessor this income data.
It is my view a tax assessor should not be expected to guess or speculate as to *825 taxable property's actual income or be forced to seek comparable figures of income from other sources when the property owner is in the best position to make such information available to the tax assessor. Presumably, if one taxpayer can refuse the tax assessor such income information with impunity, all others can likewise do so.
The income the Tax Assessor was to consider here is only that derived "from the property" to be assessed, and not the income derived by various other shopping centers generally. Who is in a better position to supply this income information accurately than the property owner himself?
It's an old and honored maxim that in order to obtain equity one must do equity. Here, the Petitioner refused to do that which the statute reasonably contemplates  furnish necessary information of its property's income to the Tax Assessor so he could timely consider it in making the assessment  yet Petitioner complains and seeks judicial relief in equity for the Tax Assessor's alleged failure which, if granted, sets an illogical precedent damaging to overall tax assessment processes. Walter v. Schuler, supra, inveighs against any construction of the assessment statute that would result in an illogical or ineffective conclusion.
This Court knows that tax assessors work against time to prepare assessments for tax rolls and to comply with deadlines for tax notices, equalization, etc. When taxpayers refuse to cooperate seasonably and supply statutory information needed to aid the tax assessor in complying with the tax assessment statute, they do so to their possible disadvantage. Taxpayers are not compelled by law to furnish income information concerning their properties to the tax assessors, but if they refuse to do so they are not in a very tenable position to complain in an equity court that the tax assessor failed to take income into account in assessing their properties. Furthermore, tax assessors should not be expected to do the impossible. If they are unable, after due diligence, to comply with any of the criteria of Section 193.021(7), they must of necessity go forward and make the annual tax assessment of property, bona fide complying with the statute as far as humanly possible. The presumption is that they have faithfully carried out their official assessment duties unless and until the contrary is affirmatively demonstrated by the aggrieved taxpayer.
The Tax Assessor here utilized comparable sales (gross figures) of other shopping centers in the Dade County area in order to try to close the gap in the assessment criteria not filled by the Petitioner's failure to duly supply the income information.
To the contrary, the taxpayer's expert, Mr. Ridolf, sought to have the trial court accept an estimate of the property's value based on comparable sales of shopping centers throughout the nation, and particularly on sales of Food Fair properties and Eastern Shopping Centers in New York.
He also sought to "break down" the square footage of the parking areas in the center so as to give some portions of them less value, depending on their respective locations, and less than the building improvements on the center land. This is contrary to the rationale of our decision in Homer v. Dadeland Shopping Center, Inc., Fla. 1970, 229 So.2d 834, where we stated that a tax assessor was justified in placing the same value as a whole on all the shopping center land involved in that case.
Under the related circumstances, I agree with the District Court the trial judge was not justified from an equitable standpoint in reducing the assessment on the bases submitted by the Petitioner's expert appraiser. Had the Assessor neglected to try to secure the property's income by not seeking it from Petitioner, there might be *826 justification for relief on that score; but the fact is, he sought it and was summarily refused it. Therefore, the real question in this litigation is whether the assessment is so grossly excessive under the criteria actually utilized by the Tax Assessor in making his valuation as to justify the reduction, notwithstanding the taxpayer's refusal to cooperate. I think not. The District Court did not countenance or even bother to discuss Petitioner's inconsistent curious withholding of the income information from the Tax Assessor and then using the lack of it as a predicate for assessment reduction in this litigation. Instead, the District Court, on a review of the trial evidence, including income evidence which was finally "coughed up" in the case by Petitioner in its effort to secure the reduction and used by its expert in his testimony, refused to accept the trial judge's finding that "net income" was preferable to gross income as a multiplier or that the method used by the taxpayer's appraiser was "more logical and fast" than the method used by the Tax Assessor. Petitioner's expert, Mr. Ridolf, himself admitted that use of a gross income multiplier was "acceptable." In fact, he pointed out that "if you are talking to a banker about financing" use of a net income multiplier would be more likely, but an investor would be concerned with a gross income multiplier. The test of fair market value is not on what basis an owner may obtain financing for a going business, but in what amount a willing investor would be willing to pay for property. Thus, by his own standards, Mr. Ridolf probably should have used a gross income multiplier rather than a net income multiplier. The trial court well realized that the gross income multiplier method used by the Tax Assessor was a valid hypothesis of value. It could not find that this hypothesis was invalid due to Mr. Ridolf's own testimony. However, it reduced the assessment because it felt that "the net income multiplier is a more logical and fast method."
To sum up, there is no jurisdictional conflict. As to the merits, the income factor information finally came forward  though belatedly  at the trial in the effort of Petitioner, inconsistently, to obtain in a court of equity a reduction of the tax assessment. Thus in the ultimate no harm was done the Petitioner. It contested the assessment by attempting to make capital of its own failure in not supplying the income information to the Tax Assessor as the basis for reducing the assessment. But when Petitioner came forward with the income information in the trial of the case  together with its expert appraiser's analysis thereof  which Petitioner had to do in order to carry its burden to demonstrate affirmatively any over-valuation, it failed to convince the appellate court that it had been over-assessed as a matter of law, even when the factor of the property's income was taken into consideration.
I would discharge the writ as improvidently issued.
SPECTOR, District Court Judge (dissenting).
I respectfully dissent from the opinion and decision of the Court's majority herein.
In my view, the record, briefs, and argument of counsel fail to demonstrate, as found by the Circuit Court, that the assessment made by the respondent of petitioner's property was unreasonable, arbitrary or arrived at by failing to substantially follow the statutes governing assessment of property for tax purposes so as to require the assessment to be set aside on the grounds of illegality.
I would discharge the writ as having been improvidently issued.
NOTES
[1] The income was tendered but upon condition that the assessor advise how it would be treated or used, to which the assessor did not agree.