277 So.2d 307 (1973)
ESCAMBIA CHEMICAL CORPORATION, a Corporation, Now Air Products and Chemicals, Inc., As Successor by Merger, Appellant,
v.
F.M. FISHER, As Tax Assessor of Santa Rosa County, Florida, et al., Appellees.
No. Q-288.
District Court of Appeal of Florida, First District.
April 24, 1973.
Rehearing Denied May 31, 1973.
Bert Lane, Beggs, Lane, Daniel, Gaines & Davis, Pensacola, for appellant.
Allen W. Lindsay, Lindsay & Lindsay, Milton, and Gordon W. Wells, Wells & Brown, Pensacola, for appellees.
*308 CARROLL, DONALD K., Judge:
The plaintiff in an action seeking declaratory and injunctive relief has appealed from a final judgment entered by the Circuit Court for Santa Rosa County upholding the defendant tax assessor's 1970 tax assessment of the plaintiff's property, a chemical plant, in the said county at $19,923,238.
The basic question presented for our determination in this appeal is whether the defendant tax assessor's 1970 assessment of the plaintiff's said property was legally made.
At an evidentiary hearing the defendant testified concerning the methods he employed in appraising the value of the plaintiff's property and stated that, after appraising the property for 1966, "the remaining assessments are basically plus and minus for additions and withdrawals, basically the same procedure... ."
The defendant tax assessor thus testified, in effect, that he did not evaluate the plaintiff's property for the year 1970 but, instead, took the valuation for 1966 and took into consideration "plus and minus for additions and withdrawals... ." Such a valuation procedure has not been authorized by any statute enacted by the Florida Legislature. That procedure does not, in our opinion, meet the requirement that tax assessors must assess anew each year all taxable property. That was held by the Supreme Court of Florida in St. Joe Paper Company v. Brown, 223 So.2d 311 (Fla. 1969), involving an assessment of pasture lands. In that case the Supreme Court stated:
"Petitioner contends that its evidence or method of evaluation does in fact encompass all the statutory criteria. Whether or not this is true, or essential in the present controversy, we conclude that the real issue in this case is the propriety of requiring evidence reflecting the value of standing timber on specific property, or evidence of market value of timberlands as to which the assessment is alleged to be excessive. Certainly there can be no question that fair market value is, under our Constitution and cases, the gauge by which all methods of valuation, statutory or otherwise, must be measured. And assessment of property on this basis does of course require multiple assessments, i.e. assessment anew each year, of all taxable property." (Emphasis in last sentence supplied.)
This assessment anew each year of all taxable property appears to be contemplated by the applicable statute. Section 193.023, Florida Statutes, F.S.A., clearly contemplates an annual evaluation and assessment of all property, that section providing:
"The tax assessor shall complete his assessment of the value of all property no later than July 1 of each year, except that the department may for good cause shown extend the time for completion of assessment of all property."
The language of this just-quoted statutory provision clearly shows that the Legislature, in enacting it, contemplated that the evaluation of property constitutes an essential part of the assessment process that must be completed by July 1 of each year.
In addition to the foregoing consideration, the record shows that the defendant failed to follow all of the guidelines laid down by the Legislature for use by tax assessors in valuing property for tax purposes.
Incidentally, the record before us shows that the subject property, which was evaluated by the defendant for 1970 at a valuation of $19,923,238, was purchased by the plaintiff in 1969 for $3,468,055. This is not, of course, a controlling factor in this litigation.
Pursuant to the constitutional mandate to provide equal taxation and secure a just valuation, the Legislature enacted Section 193.011, Florida Statutes, F.S.A., providing *309 that, in arriving at such just valuation, the county tax assessors "shall take into consideration" eight factors, the seventh of which is the "income from said property... ." Nevertheless, the defendant tax assessor testified unequivocally that he did not use the income method in valuing the plaintiff's property for various reasons.
Our holding in this case is consonant with our holding in our recent decisions in Container Corporation v. Long, Fla.App., 274 So.2d 571, opinion filed February 1, 1973, and Container Corporation v. Rutherford, Cases No. R-216, R-244, R-245, R-257, R-258, R-259, and R-261, opinion filed April 12, 1973, not yet reported, in which we held in effect that the tax assessors of Florida in assessing property in their counties for tax purposes are required to follow the guidelines furnished them pursuant to law in order to effectuate the constitutionally-guaranteed right to a fair and uniform rate of taxation among the counties of this state.
For the foregoing reasons, we reverse the judgment appealed from herein and remand the cause with directions for further proceedings consistent with the views hereinabove expressed.
Reversed and remanded with directions.
RAWLS, J., concurs.
SPECTOR, C.J., dissents.
SPECTOR, Chief Judge (dissenting).
I respectfully dissent from the majority opinion. In examining the extensive transcript, it appears that a firm of consultants, O. Germany and Associates, evaluated the plant as of January 1, 1970, for that tax year.
In connection with this evaluation, a registered chemical engineer, Dr. Howell, spent two weeks at a plant site in order to describe and explain the plant layout and provide the process flow charts to O. Germany and Associates. Another electrical engineer spent one hundred fifty-two (152) hours or the equivalent of twenty (20) working days at Escambia Chemical and provided O. Germany and Associates with an evaluation of the electrical system. A senior mechanical appraiser for O. Germany spent four weeks checking the water, gas, oil and railroad facilities and in inventorying the machinery and office equipment.
Finally, an appraiser spent ten weeks in the field using all the above expert knowledge and information appraising Escambia Chemical. This appraiser testified that he used the following criteria: the highest and best use to which the property could be put and expected to be used in the immediate future, location of the property, the quantity and size of the property, the replacement cost, value of any improvements thereon, the physical condition of the property, the income from the property, and the net proceeds of the sale of the property. This same appraiser testified that he applied all three of the accepted standard approaches to fair market value  cost, income and market  and concluded that the fair market value of the personal property using the cost approach is $17,370,000.00, and using the income approach it is $18,800,000.00. The appraiser testified that the figure based upon market approach is unknown since the information was not complete on the recent acquisition, and information on recent sales in the entire field of petrochemical plants as related to this facility was almost nonexistent.
The appraiser testified that under the income approach, he did an in-depth economic study of each process system developing the standard cost and the sales cost and what this facility was capable of generating in profit on a yearly basis.
Under the cost approach, the appraiser testified that he took the current installed cost as of January 1, 1970, less depreciation at 62 percent, to arrive at the fair market value. The appraiser contends that the cost approach is the most reliable and assesses the personal property of the plant *310 at $17,370,000.00 as of January 1, 1970. The tax assessor appraised the same property at approximately $17,790,000.00. [There is no dispute in regard to the real property, including the buildings, with the exception of the special purpose buildings.]
The lower court found that the tax assessor applied the criteria specified in Section 193.011, Florida Statutes, F.S.A., and arrived at a fair evaluation based on the cost approach.
I believe the tax assessor, taking into consideration all of the expert testimony, arrived at a just evaluation and this is supported by the evidence.
I would therefore affirm the judgment reviewed herein.