296 So.2d 94 (1974)
R.G. CASSADY, Lake County Tax Assessor, et al., Appellants,
v.
Holt S. McKINNEY, Appellee.
No. 73-230.
District Court of Appeal of Florida, Second District.
June 14, 1974.
*95 Christopher C. Ford, Tavares, for appellants.
C. Welborn Daniel, Clermont, and Neal D. Huebsch, Eustis, for appellee.
MANN, Chief Judge.
After being denied relief by the tax adjustment board, McKinney brought this suit in the Circuit Court challenging the assessment of his grove lands as illegal, excessive and in violation of the preferential treatment mandated by Florida's "Green Belt" law, Fla. Stat. 193.461(6), F.S.A. 1971. At the time this action arose, that statute read as follows:
"The county tax assessor in assessing such lands so zoned and primarily used for agricultural purposes as described and listed shall consider no factors other than those relative to such use. The tax assessor in assessing land within this class shall take into consideration the following use factors only:
(a) The present depreciated value of improvements thereon;
(b) The quantity and size of the property;
(c) The condition of said property;
(d) The present value of said property as agricultural land;
(e) The income produced by said property;
(f) The character of the area or place in which said property is located; and
(g) Such other agricultural factors as may from time to time become applicable."
The lower court ruled that Cassady, the tax assessor, had failed to consider two of *96 the seven criteria enumerated by that law and ordered that the property be reassessed to include consideration of both (1) the depreciated value of the orange trees and (2) the income produced by the property.
In 1956 McKinney began the somewhat risky business of operating an orange grove in the "cold" citrus area of Lake County. His groves have since been damaged by four successive freezes and have shown consistent annual losses of over $20,000. From 1966 through 1968 the plaintiff's property was valued at approximately $110,500 total. Apparently the result of many of the plaintiff's trees reaching maturity and becoming commercially bearing, however, the assessments jumped to over $227,000 in 1969. The 1971 and 1972 assessments successfully challenged by McKinney in the trial court appear unchanged from the 1969 assessment. The 286 acres of grove land involved here ranged in assessed value from $300 to $900 per acre in addition to over $32,000 worth of buildings. McKinney, however, contends that the property is worth no more than $200 per acre plus the depreciated value of improvements.
In seeking a reversal of the reassessment order, appellants contend that the proof does not coincide with the allegations of the complaint. While the language of the complaint is somewhat ambiguous, we feel it sufficient, in light of the evidence and of Civil Procedure Rule 1.190(b), 30 F.S.A., to support the trial court's judgment.
Secondly, appellants contend that the "Green Belt" law was erroneously construed by the trial court. More specifically they argue: (1) that the tax assessor need not consider all seven use factors; (2) that orange trees are not improvements as listed in the act; and (3) that the assessor need not consider the specific income of particular property.
Unquestionably, the county tax assessor has considerable discretion in arriving at a just valuation of realty. The assessment will be held invalid, however, if he fails substantially to comply with the requirement of law designated to ascertain such values, and the evaluations are shown to be essentially unjust or unequal abstractly or relatively. Powell v. Kelly, Fla. 1969, 223 So.2d 305. Statutory delineation of these criteria was intended to limit the assessors' discretion and to tie them more closely to the uniform constitutional standard of just valuation. In Walter v. Schuler, Fla. 1965, 176 So.2d 81, our Supreme Court declared that just valuation was legally synonymous with fair market value, noting that "If assessors will apply that test and in doing so observe the seven guideposts in Sec. 193.021, justness should be secured to the taxpayer and the tangle that has developed should be unraveled."
Moreover, Florida courts have repeatedly recognized the assessor's obligation to consider all of the statutory criteria. Palm Corporation v. Homer, Fla. 1972, 261 So.2d 822; St. Joe Paper Co. v. Brown, Fla. 1969, 223 So.2d 311; Escambia Chemical Corp. v. Fisher, Fla.App.1st, 1973, 277 So.2d 307; Exchange Realty Corp. v. Hillsborough Co., Fla.App.2d, 1972, 272 So.2d 534. While these decisions were based on § 193.011 (formerly § 193.021), dealing with non-agricultural realty, we find no significant differences in the statutory language of § 193.461 which would require a different rule.[1]
*97 The testimony of Cassady and his assistant indicates that they were generally aware of the seven criteria, but it is clear that neither had any knowledge of the actual income or actual productivity of the grove.[2] Both had estimated the grove's value by applying their expertise after viewing the grove and by using average citrus prices over an eight to ten year period. Similarly, since the appellants construed "improvements" as including only buildings and other structures, they made no attempt to determine the depreciated value of the trees.
Although the term "depreciated value" is ambiguous, we must contrue the statute's meaning in light of its ultimate goal: to provide guideposts to the determination of just value or fair market value. Depreciation may refer to either actual loss in value due to deterioration or obsolescence or to the more artificial bookkeeping adjustments made to allocate an item's cost throughout its useful life. As applied to orange trees, the latter interpretation sheds little light on the land's just valuation. When the statute speaks of "The present depreciated value of improvements thereon" it means the actual current value as distinguished from original or replacement costs. It does not mean current book value after allowance for depreciation, which may reflect nothing more than an accommodation to Federal income tax laws and regulations. While the assessor was obligated to consider the "depreciated" value of orange trees we take the statutory language to mean their present actual value, to which depreciated book value for tax purposes may bear little relation.[3]
Appellants' failure to consider the property's income also violates the statutory requirements. Palm Corporation v. Homer, supra. While considerable discretion is granted the assessor in arriving at a just valuation, the assessor's failure to consider required factors mandates a reassessment.
Affirmed.
HOBSON and BOARDMAN, JJ., concur.
NOTES
[1] The assessor's failure to consider the statutory criteria, however, may be distingushed from a case involving the discretionary application of all factors considered in arriving at a just valuation. As the Supreme Court noted in Powell v. Kelly, Fla. 1969, 223 So.2d 305 at 309:

"The appraisal of real estate is an art, not a science. There are various methods of approach in determining the market value of real estate, each approach involving the use of various guidelines. Although the use of such guidelines may be mandatory in appraisal work, their application to various situations calls upon the exercise of judgment."
[2] There is no indication from the record, nor does the assessor allege, that income data was withheld at the time of the assessment. See Palm Corporation v. Homer, Fla. 1972, 261 So.2d 822.
[3] Depreciation for Federal tax purposes for instance may reduce a taxpayer's basis far below the improvement's fair market value for agricultural purposes.