OTT, Judge.
This is an appeal from a final judgment voiding for the second time the assessment of certain agricultural lands by the tax assessor for failure to comply with Section 193.461(6), Florida Statutes, the “Green Belt Law.” The trial court’s judgment further found and set the assessment for the two tax years in question, 1971 and 1972. We affirm the trial court in its judgment that the tax assessments were illegal and void. We reverse the trial court on deter *956 mining and settling the assessments of the land for the reasons hereinafter discussed.
This is the second appearance of this case before the court. See Cassady v. McKinney, 296 So.2d 94 (Fla. 2d DCA 1974). In its first appearance this court affirmed the trial court’s determination that the tax assessor had not complied with Section 193.-461(6)[1] in that he did not consider the following two of the seven use factors mandated by the legislature:
(1) The present depreciated value of improvements thereon. (Including citrus trees)
(2) The income produced by said property-
The tax assessor was directed to reassess particularizing as to these two factors.
Upon the subsequent hearing before the trial court the evidence again was quite clear as to the failure of the tax assessor to consider these two factors although well documented by the evidence submitted both to the tax assessor and the trial court. The trial court correctly found the second assessment (identical to the first invalid assessment) illegal and void. The trial court also rejected the testimony of the taxpayer as being even less in compliance with the statute. In this we fully concur and, therefore, affirm.
There remains the question of the power or propriety of the trial court in proceeding to its own determination of the assessment value of the property and the tax owed thereon.
The tables of the tax assessor establishing the per acre average or normal value attributed to groves of a given type, age, size, condition, etc. were before the court and supported by the evidence as having been established by accepted methods and considerations.
Detailed evidence was presented concerning the actual fruit production of the groves, the husbandry practices, the expenses of the owner and the amount (gross and net) realized for each of the years from 1961 to 1971. The consistent below normal income was uncontradicted in spite of exceptionally good husbandry.
There was also ample evidence concerning the unusual condition and development of the trees over the period of years from planting up to the present (1971 and 1972) levels of maturity, condition and production—again markedly and consistently below normal.
The evidence clearly established that consideration of these two factors in arriving at the assessment of these agricul *957 ture (grove) lands would result in reducing their assessed value. The evidence clearly mandated “some” or “due” or “appropriate” consideration (adjustment from the normal) in this particular assessment. In other words the evidence clearly demonstrated substantial variation from the average or normal grove of similar type, size, age, etc., not due to the owners neglect or abuse. Some appropriate adjustment was therefore in order provided made by accepted or established methods. It is our view that evidence was totally lacking in this required particular and the trial court was thereby prevented from making its own determination, regardless of its own expertise or experience in this area.
In fixing tax assessments the trial court is required to have competent substantial evidence in the record as to the manner, extent or degree such factors bear upon the valuation. If there is competent evidence before the trial court in this regard it certainly is free to accept that which is most believable or compromise between two extremes as it deems the facts and circumstances warrant. It may thereupon make the necessary calculations or adjustments. Otherwise there could not be a ready resolution of a tax assessment where the tax assessor consistently fails or declines to consider such requirements. In the absence of such evidence the trial court cannot substitute its own independent judgment, no matter how enlightened or realistic.
In Simpson v. Merrill, 234 So.2d 350 (Fla.1970), the Supreme Court of Florida affirmed the First District Court of Appeal’s holding that the circuit court’s fixing of assessments was improper. The supreme court agreed with the First District Court of Appeal that the statutes dealing with the tax assessment of lands
L . . authorizes the circuit court to inquire into and determine the legality, equality and validity of assessments and to render decrees setting aside such assessment or any part of the same that shall appear to be contrary to law. But this provision of the law does not permit the trial judge to use his independent judgment, without competent evidence being introduced before him, in fixing assessments. He can not take the place of the assessor, although he may reduce the tax assessor’s assessment if competent evidence is introduced showing the same to be in error.’ 234 So.2d at 352. (Emphasis supplied.)
The facts of Simpson showed that the assessed valuation had risen as follows:
1964 $6,900
1965 $34,800
1966 $185,600
1967 ' $185,600
in spite of a “static” condition prevailing since the 1965 assessment. The respondent landowner put on testimony to the effect that the highest possible assessment would be $47,000. The lowest figure reached by the tax assessor’s witness was $146,500. The supreme court held that
while it is clear that the assessments for the years 1966 and 1967 are excessive, respondents have not carried the burden of presenting evidence to establish the degree of excessiveness. 234 So.2d at 352. (Emphasis supplied.)
Thus the supreme court held that the lower court could not properly find that the fair market value of the realty was $109,250 since no evidence was presented upon which a value could be arrived at between the figures given by either side.
The Simpson proposition that the circuit court must apply “competent evidence” in any reduction of illegal assessments is applicable in the instant case. We, therefore, reverse and set aside the trial court’s adjustment and determination of the assessment of the lands and remand the case for further proceedings consistent with the foregoing.
HOBSON, Acting C. J., concurs.
McNULTY, J., concurs specially.

.At the time of the assessment in question (1971-1972) Florida Statute § 193.461(6)' read as follows:
The county tax assessor in assessing such lands so zoned and primarily used for agricultural purposes as described and listed shall consider no factors other than those relative to such use. The tax assessor in assessing land within this class shall take into consideration the following use factors only:
(a) The present depreciated value of improvements thereon;
(b) The quantity and size of the property;
(c) The condition of said property;
(d) The present value of said property as agricultural land;
(e) The income produced by said property;
(f) The character of the area or place in which said property is located; and
(g) Such other agricultural factors as may from time to time become applicable.
The Green Belt Law was amended in 1972. It now reads as follows:
(6)(a) In years in which proper application for agricultural assessment "has been made and granted pursuant to this section, the assessment of land shall be based solely on its agricultural use. The [property appraiser] shall consider the following use factors only:
1. The quantity and size of the property;
2. The condition of said property;
3. The present market value of said property as agricultural land;
4. The income produced by said property;
5. The productivity of land in its present use;
6. The economic merchantability of the agricultural product; and
7. Such other agricultural factors as may from time to time become applicable.
Note that parts (a) and (f) of the prior statute were not incorporated into the new version which added new sections (5) and (6). Former parts (b), (c) and (e) correspond to new parts (1), (2) and (4). Former part (d) has been changed significantly in meaning by new part (3).