462 So.2d 497 (1984)
W.R. (Ray) DANIEL, Jr., Property Appraiser of Hillsborough County, Appellant,
v.
CANTERBURY TOWERS, INC., Appellee/Cross-Appellant.
No. 83-1864.
District Court of Appeal of Florida, Second District.
December 28, 1984.
As Amended January 30, 1985.
*498 John A. Curtiss, David C.G. Kerr and Ted R. Manry, III, of MacFarlane, Ferguson, Allison & Kelly, Tampa, for appellant.
Edward M. Waller and Thomas P. Scarritt, Jr., of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellee/cross-appellant.
CAMPBELL, Judge.
Appellant, W.R. (Ray) Daniel, Jr., as Property Appraiser of Hillsborough County, appeals an amended final judgment which invalidated his property assessments for ad valorem taxes assessed against appellee, Canterbury Towers, Inc., for the 1979, 1980 and 1981 tax years. Appellee cross-appeals that portion of the amended *499 final judgment which affirmed appellant's denial of appellee's claim for charitable exemptions for 1979, 1980 and 1981. The trial court, in its amended final judgment after invalidating appellant's assessments of appellee's property for the three tax years in question, made its own determination of the assessed value of appellee's property.
On appellant's appeal, we reverse the invalidation of appellant's assessments and the trial court's reassessments of appellee's property for the tax years 1979, 1980 and 1981.
On appellee's cross-appeal, we affirm the trial court's approval of the denial by appellant of appellee's claim for charitable exemption for the tax years 1979, 1980 and 1981.
We dispose of the cross-appeal first. Appellee/cross-appellant attacked the denial of its claimed charitable exemptions on the basis of a constitutional challenge to section 196.012(6) and section 196.1975, Florida Statutes (1979). The essential basis of appellee/cross-appellant's challenge to those statutes was that they were unconstitutionally vague in supplying inadequate guidelines for determination of the charitable exemptions provided therein. That attempt to support a claimed charitable exemption from taxes by a constitutional attack on the validity of the very statutes providing for such an exemption must obviously fail. Section 3(a), Article VII, Constitution of the State of Florida, provides only for a charitable exemption when provided by general law. Thus, if the law which grants the exemption is declared invalid, there is no exemption. To his credit, counsel for appellee/cross-appellant acknowledged at oral argument the fatal flaw in their "Catch 22" argument against the constitutional validity of the exemptory statutes.
In reversing the trial court's amended final judgment on appellant's appeal therefrom, we are required to construe section 193.011, Florida Statute (1979), to determine whether appellant acted in compliance with the statute in assessing appellee's property. The trial court concluded he did not, however, we respectfully find otherwise. Our examination of section 193.011, and our determination of appellant's compliance is controlled by the holding in Blake v. Xerox Corp., 447 So.2d 1348 (Fla. 1984), as later enunciated herein. A look at some of the essential facts of this case is necessary.
Appellee was incorporated in 1976, as a Florida nonprofit organization. It owns two contiguous parcels of Hillsborough County real property which are improved with a fifteen-story condominium-type building known as "The Canterbury Tower." This structure contains 125 residential apartment-type living units, as well as kitchen, dining and nursing facilities.
The real property is utilized by appellee as a life care facility which has been licensed under chapter 400, Florida Statutes (Nursing Facilities) and chapter 651, Florida Statutes (Life Care Facilities).
The property was purchased by appellee for $4,500,000 in 1976. The valuation assessment by the property appraiser and the assessments as judicially determined by the trial court are as follows:

 Assessment by Property Assessment
Year Appraiser by Trial Court
1979 $4,445,045 $4,173,354
1980 $5,675,910 $3,341,563
1981 $5,675,910 $3,930,575

Appellee offers its residents the benefit of a health care facility immediately adjacent to the living units and it contracts with them to care for them for the rest of their lives on the basis of the nonrefundable entrance fee paid upon admission. These entrance fees (sometimes referred to as "Entrance Endowments") have varied depending upon the size of the particular living unit.

 Entrance Endowment Entrance Endowment
 Fees for Least Fees for Most
Year Expensive Unit Expensive Unit 
1978 $22,450 $50,950
1979 $23,450 $50,950
1980 $24,950 $54,950
1981 $28,950 $64,500

*500 Monthly service fees charged at "The Canterbury Tower" vary depending upon the size of the unit as follows:

 Monthly Service Fee Monthly Service Fee
 for Least for Most
Year Expensive Unit Expensive Unit 
1978 $295 $495
1979 $340 $570
1980 $396 $664
1981 $455 $764

Only "financially responsible" applicants are accepted for residency. All are subjected to a financial screening process. "Entrance Endowments" paid by residents to gain admission to "The Canterbury Tower" are deposited in an escrow fund utilized for servicing the mortgage on the premises. At the end of 1981, this fund amounted to approximately $1,000,000.
Appellee provides the following services to its residents: one meal per day, special diet entries, air conditioning, heating, electricity, water and telephone service, building janitor and maintenance, weekly housekeeping services, weekly laundry service, planned social and cultural recreational activities, emergency nursing service, as well as private health care service, all of which significantly increase appellee's operating expenses.
"The Canterbury Tower" is operated by a professional management company which, in 1981, charged $6,250 per month, and an apparent consulting fee of $260,000.
Although the usual or normal operating ratio of expense to gross income for commercial apartment houses in Hillsborough County has been determined to be in the range of forty to forty-five percent, the actual operating ratio for appellee is seventy-two percent.
The premises owned by appellee was, at the times in question, encumbered by a purchase money mortgage in the amount of $4,500,000.
In the event that a resident, due to illness, must be transferred into the medical facility, then the management may, upon deciding that the individual can no longer function on their own, re-sell the residential living unit. There are, in actuality, no sales of interest in real property to the residents of "The Canterbury Tower." What occurs is that the resident receives a "license" to occupy a residential unit during the remainder of his life.
The medical/nursing facility of appellee has been granted a charitable exemption from taxes pursuant to sections 196.012 and 196.1975. Appellee's financial data comingles income and expense figures applicable to the individual residential units on one hand, and the tax exempt medical/nursing facility on the other.
At its inception in 1977, appellee enjoyed substantial proceeds from the sale of its housing units. As units were sold to permanent residents, however, appellee experienced a significant drop in sales proceeds. Specifically, the amount decreased from approximately $4,500,000 for the first three years, to between $300,000 to $400,000 for the years 1980 and 1981.
When the appellant valued appellee's property in 1979 through 1981, he used the cost approach to make the valuation. The building was treated as a "special purpose" property, and the entire parcel appraised solely by use of the cost approach. A "special purpose" property is one that cannot easily be converted to another use and that has no ready market value, rental value or income stream.
While appellee experiences somewhat of an income stream, the appellant in this case felt the income approach was too complicated to apply because of the complications and imbalance caused by the entrance and monthly fee charges. While appellant never had actual expense or income figures in connection with the property, he did have available the general scheme of monthly charges, entrance fees and overall expense figures which were not broken down between those attributable to the residential units and those attributable to the medical/nursing facility. Because of the dual nature of the facility and the complications caused by attempting to accurately predict any stability in the income approach over the years, appellant concluded that appellee's property was "special purpose" type *501 property for which a cost approach for assessment purposes would be more realistic and accurate than an income approach. The trial court concluded that appellant's assessments were invalid for his failure to properly consider and utilize the income approach.
Pursuant to section 193.011, Florida Statutes, there are certain "factors" which a property appraiser must take into consideration in arriving at an evaluation for ad valorem tax purposes. These statutory factors are:
(1) The present cash value of the property;
(2) The property's present use and the highest and best use to which the property can be expected to be put in the immediate future;
(3) The location of the property;
(4) The quantity or size of the property;
(5) The cost of the property and its present replacement value;
(6) The condition of the property;
(7) The income from said property; and
(8) The net proceeds of sale thereof.
Because of the highly discretionary and judgmental character of the property appraiser's work, the Florida Supreme Court has prescribed a very limited scope of judicial review for property appraiser assessments. In Folsom v. Bank of Greenwood, 120 So. 317, 318 (Fla. 1929), it held:
The prima facie correctness of an assessment when made by the proper officers must be affirmatively overcome by appropriate and sufficient allegations and proofs excluding every reasonable hypothesis of a legal assessment.
See District School Board of Lee County v. Askew, 278 So.2d 272 (Fla. 1973); Homer v. Dadeland Shopping Center, Inc., 229 So.2d 834 (Fla. 1970); Powell v. Kelly, 223 So.2d 305 (Fla. 1969).
The principle that the property appraiser's assessment may be judicially overturned only if there is no reasonable hypothesis to support it, has also been followed by the decision of the various district courts of appeal. Exchange Realty Corp. v. Hillsborough County, 272 So.2d 534 (Fla. 2d DCA 1973); Tampa Coca-Cola Bottling Co. v. Walden, 230 So.2d 52 (Fla. 2d DCA 1969); Harbond, Inc. v. Anderson, 134 So.2d 816 (Fla. 2d DCA 1961); Atlantic International Investment Corp. v. Turner, 383 So.2d 919 (Fla. 5th DCA 1980); Hecht v. Dade County, 234 So.2d 709 (Fla. 3d DCA 1970); Keith Investments, Inc. v. James, 220 So.2d 695 (Fla. 4th DCA 1969); Florida East Coast Ry. v. Green, 178 So.2d 355 (Fla. 1st DCA 1965).
It seems in most cases, as here, that the principal argument between the taxpayer and the property appraiser occurs over the extent of the consideration the property appraiser must afford each of the factors. Certainly, a property appraiser cannot simply "out of hand" reject, without any consideration, one of the factors as being inappropriate. However, the opposite principle, that after considering a factor, the property appraiser cannot reject it as being inappropriate under the circumstances of the particular case, is not correct either. Appellee here seems to seek imposition of a rule that would require an appraiser to consider in depth all of the particulars concerning a specific factor even when that specific factor, from a consideration of all of the factors, has been determined to be inappropriate to the instant case.
In the case at bar, there is ample evidence that the property appraiser did, in fact, consider all the factors enumerated in section 193.011, Florida Statutes (1981). There is absolutely no evidence in the record that he failed to consider any one of these statutory factors. In any assessment situation, some of the particular factors of the statute will, if relied upon, "primarily" or "exclusively" produce a different valuation than will others. In the case at bar, appellee's peculiar and unique income flow, if used as an "income approach" for the purpose of fixing valuation, will produce a lower value than if either the "cost approach" or the real rental value is utilized. That alone is no basis for invalidating *502 the property appraiser's decision. Keith Investments, Inc. v. James.
The reason for the "no reasonable hypothesis" doctrine with respect to the judicial review of property appraiser decisions, is that there are numerous, and sometimes conflicting, appraisal theories or techniques for establishing an opinion as to real estate value. All of these theories and approaches have general recognition, and none are necessarily more appropriate than others for all cases.
It is because there are so many well recognized approaches and techniques for arriving at an appraisal decision that the property appraiser's decision may be overturned only if there is no reasonable hypothesis to support it. It is well established in the Florida law of ad valorem tax assessment, that where the unique or special purpose nature of the property makes it difficult or impossible to establish a market value for it, as is the case for the property involved in this case, then the valuation process should comprehend and give effect to all of the factors that go to make up the intrinsic value of the property. Hillsborough County v. Knight & Wall Co., 153 Fla. 346, 14 So.2d 703 (1943); Calder Race Course, Inc. v. Overstreet, 363 So.2d 631 (Fla. 3d DCA 1978); Dade County v. Miami Herald Publishing Co., 285 So.2d 671 (Fla. 3d DCA 1973).
While a property appraiser must consider each of the factors set out in section 193.011, he is free to assign to each factor such weight as he deems proper. Even where each of several different factors might be proper, the selection of one over the other is not necessarily invalid. An appraiser is not required to give all factors equal rate so long as each factor is carefully considered and given such weight as the facts justify. Bath Club, Inc. v. Dade County, 394 So.2d 110 (Fla. 1981); Straughn v. Tuck, 354 So.2d 368 (Fla. 1978); Bystrom v. Equitable Life Assurance Society, 416 So.2d 1133 (Fla. 3d DCA 1982); Lanier v. Walt Disney World Co., 316 So.2d 59 (Fla. 4th DCA 1975).
As was held in Blake v. Xerox Corp., if the evidence shows an appraiser properly considered the statutory factors (which we conclude is the case here), then:
[T]he only remaining question was whether the appraiser, following the law, could conceivably and reasonably have arrived at the appraisal value being challenged. Although the trial court appears to have grounded its judgment on the finding that Xerox had failed to prove that its method was superior, this finding was unnecessary to the judgment. Regardless of which method was theoretically superior, the trial court was bound to uphold the appraiser's determination if it was lawfully arrived at and within the range of reasonable appraisals, that is, if it was supported by any reasonable hypothesis of legality.
We, therefore, reverse the trial court on appellant Daniel's appeal and direct, on remand, that appellant's appraisals for the years in question be reinstated. We affirm the trial court on appellee's cross-appeal.
Reversed in part, affirmed in part and remanded for treatment consistent herewith.
RYDER, C.J., and BOARDMAN, J., concur.