729 So.2d 467 (1999)
Ed HAVILL, as Lake County Property Appraiser, Appellant,
v.
LAKE PORT PROPERTIES, ETC., INC., Appellee.
No. 97-2496.
District Court of Appeal of Florida, Fifth District.
March 19, 1999.
Rehearing Denied April 22, 1999.
*468 Gaylord A. Wood, Jr., and B. Jordan Stuart, of Law Offices of Wood & Stuart, P.A., New Smyrna Beach, for Appellant.
Benjamin K. Phipps, of The Phipps Firm, Tallahassee, and Walter S. McLin, III, of McLin, Burnsed, Morrison, Johnson, Newman & Roy, P.A., Leesburg, for Appellee.
GRIFFIN, C.J.
Edward E. Havill, as Property Appraiser of Lake County ["Property Appraiser"], has appealed a final judgment in favor of Lake Port Properties, Inc. ["Lake Port"] in an action below contesting the 1995 ad valorem tax assessment on Lake Port Square, a total life care and residential facility for retired persons, or continuing care retirement community. Lake Port alleged in its complaint below that in assessing the property, the Property Appraiser failed to follow the requirements of section 193.011, Florida Statutes (1995)[1], and thereby its 63.18 acre property *469 was assessed in excess of "just value" as defined under the Florida Constitution, Article VII, Section 4 (1968).
On January 1, 1995, Lake Port Square consisted of a sixty-bed skilled nursing facility; a thirty-five unit assisted living facility; an independent living center of one hundred ninety-six private apartments including a spacious lobby and reception area, a large dining room and commercial kitchen, as well as numerous private meeting and dining rooms; a four-building congregate living facility consisting of an indoor swimming pool, a small restaurant designed as an old-fashioned ice cream parlor, a large meeting room and other recreational facilities; and separate structures including an information/sales center and maintenance building. Residents at Lake Port Square pay an initial entrance fee of between $40,500 and $139,900, depending on the size of the unit. This fee is treated as a species of insurance providing access to the health center at a discount off market rate. Additionally, residents pay a monthly "service fee," ranging from $895 to $1,335, for services such as housekeeping and transportation.
The Property Appraiser assessed Lake Port Square by placing a separate value on each of the eight buildings in the complex. The Property Appraiser also separately valued the land, which included miscellaneous costs for improvements such as streets, parking, and landscaping. The total assessment amounted to $17,145,728. The Lake County Property Appraiser's Property Record Card memorialized the valuation as follows:

1. Marketing [Information/Sales Center] $ 216,964
2. Utility [Maintenance Building] 36,219
3. Healthcare [Skilled Nursing and Assisted Living Center] 2,652,280
4. Lakeport [Congregate Living Facility] 180,324
5. Lakeport [Congregate Living Facility] 53,456
6. Lakeport [Congregate Living Facility] 84,783
7. Village [Congregate Living Facility] 211,123
8. Lakeside [Independent Living Facility] 12,485,714
 Land plus miscellaneous 1,224,865
 ___________
 Total assessment for parcel 116 17,145,728

Lake Port contests only the correctness of the Property Appraiser's valuation of building 8, the independent living facility. This was the subject of a non-jury trial. After trial, the court ruled that the preponderance of the evidence showed that the Property Appraiser did not "adequately" consider the fifth, seventh, and eighth factors of section 193.011. The lower court found that the evidence was "uncontroverted" that the Property Appraiser relied exclusively on the cost approach in arriving at its assessment. The court concluded that the Appraiser made no effort other than "considering it" to calculate the value of the property using the income approach. The court also found that the Lake County Deputy Chief Appraiser, Frank Royce ["Royce"], made "no meaningful effort" to consider net proceeds of sale. Accordingly, the court adopted Lake Port's value of $8,500,00 for the independent living facility, which reduced the total assessment to $13,160,014, and ordered the tax collector to prepare a corrected tax bill in that amount.
The Property Appraiser contends on appeal that the trial court: (1) erroneously *470 placed the burden on the Property Appraiser to prove the validity of the assessment on Lake Port Square; (2) incorrectly placed emphasis on methodology, rather than proof of the correctness of the value; and (3) failed to treat the assessment as presumptively correct, hence making a determination based on evidence insufficient to overcome that presumption. The Property Appraiser's arguments have merit and dictate reversal.
The Florida Constitution, Article VII, section 4 (1968), provides that "by general law regulations shall be prescribed which shall secure a just valuation of all property for ad valorem taxation ..." Section 193.011, Florida Statutes (1995), effectuates this provision by specifying eight factors to be considered in deriving just valuation of property.[2]Walker v. Trump, 549 So.2d 1098, 1102 (Fla. 4th DCA 1989).
A property appraiser's determination of "just value" is an exercise of administrative discretion within the field of his expertise. Havill v. Scripps Howard Cable Co., 23 Fla. L. Weekly S234, ___ So.2d ___, (Fla. Apr. 23, 1998), opinion revised and superseded on denial of rehearing, 1999 WL 373938 (Fla. June 10, 1999), citing Blake v. Xerox Corp., 447 So.2d 1348, 1350 (Fla.1984). A strong presumption of validity attaches to the property appraiser's assessment of property for ad valorem taxation purposes. Bystrom v. Whitman, 488 So.2d 520, 521 (Fla. 1986). If, however, the appraiser does not consider each of the statutory factors articulated in section 193.011, the presumption of validity is lost. Havill, citing Straughn v. Tuck, 354 So.2d 368, 371 (Fla.1977). The taxpayer bears a "heavy" burden in challenging a property tax assessment. Bystrom, 488 So.2d at 521. The taxpayer must meet its burden to show that the challenged valuation was not arrived at lawfully and is not supported by any reasonable hypothesis of legality. Schultz v. TM Florida-Ohio Realty, Ltd., 577 So.2d 573, 575 (Fla.1991). A taxpayer must present proof that excludes every reasonable hypothesis of a legal assessment, otherwise the county appraiser's determination of just value must be upheld. Id.; Blake, 447 So.2d at 1348.
The three traditional approaches to value, or any combination thereofnamely, cost, income, and marketwill support an assessment. Bystrom v. Equitable Life Assur. Soc'y, 416 So.2d 1133, 1144 (Fla. 3d DCA 1982), review denied, 429 So.2d 5 (Fla. 1983). The weight given to each of the factors is within the discretion of the property appraiser; reliance on a particular approach is dependent upon the type of property being assessed. Id.; Atlantic Int'l Inv. Corp. v. Turner, 383 So.2d 919, 921 (Fla. 5th DCA 1980).
At trial, both sides' witnesses were in agreement that the market approach was inappropriate because of the unique nature of the Lake Port property and corresponding lack of comparable sales. Lake Port essentially takes the position that the only valid way to appraise the Lake Port Square facility is by the income approach, a position with which the trial court appears to have agreed. Royce testified that he had considered the income approach, but rejected the approach for several reasons, including a lack of comparable properties; because he didn't believe they had been given all the information needed; because the information supplied was incorrect or incomplete; and because the complex and unorthodox "income stream" of Lake Port Square[3] made it difficult for him to accurately assess using this method. He testified specifically that he examined the *471 information provided by the taxpayer pursuant to its 1995 petition, and also considered information presented in a previous petition in 1994. He also testified that he considered the pro-forma income capitalization, the initial investment information, and the summary income statement of the nursing facility, belatedly provided by Lake Port's tax agent. Royce further pointed out that the information supplied did not accurately reflect the integrated nature of the facility, but, rather, attempted to separate income related to the living center only. Indeed, Lake Port's expert, Michael Boehm, testified at trial that he only conducted an appraisal on the living center. Finally, Royce testified that, in his opinion, Lake Port Square was a "special purpose" property best valued using a cost approach given that the revenues were generated by means atypical of income producing properties.
As for the "eighth criteria adjustment," Royce testified that the county may make an adjustment of fifteen percent when a property is sold to reflect the net proceeds of the seller after customary closing or financing costs in order to reach "just value" in its assessment. See Southern Bell Tel. & Tel. Co. v. Broward County, 665 So.2d 272, 275 (Fla. 4th DCA 1995), review denied, 673 So.2d 30 (Fla.1996). Royce testified, however, that the reduction may vary on a case-by-case basis. He testified that since he was unable to find sales in any way comparable to the subject property, he determined that a net proceed reduction would be inapplicable to Lake Port Square.
The property owner's attack on the Property Appraiser's method of calculating the assessment "falls far short of overcoming the presumptive validity of the property appraisal herein." Pier House Joint Venture v. Higgs, 555 So.2d 899, 900 (Fla. 3d DCA 1990). A tax assessment may not be overturned merely by showing that a lower valuation is more reasonable. Mastroianni v. Barnett Banks, Inc., 664 So.2d 284, 288 (Fla. 1st DCA 1995), review denied, 673 So.2d 29 (Fla.1996). It is not for the trial court to consider which method used in appraisals is superior, so long as the property appraiser's valuation took into consideration statutory factors. Walker, 549 So.2d at 1103. The application of appraisal principles to any given property requires an exercise of judgment. Id. Therefore, a greater reliance on one may result in a different valuation. Id. It is for this very reason that the property appraiser is given "great leeway" as long as he follows the requirements of law. Id. Here, the Property Appraiser concluded that the cost approach was most apt for the Lake Port Square property. The taxpayer urges the income approach is best. Neither the failure to use the income approach nor the decision not to perform the calculation makes the assessment erroneous.
Finally, the trial court apparently overlooked case law similar to the instant case; namely, the second district's holding in Daniel v. Canterbury Towers, Inc., 462 So.2d 497 (Fla. 2d DCA 1984). In Daniel, the second district held that the county appraiser in that case was within his authority in utilizing a cost approach to value a "nursing home" and in treating it as a "special purpose" property. Daniel, 462 So.2d at 502. Specifically, the court held that the trial court erred when it required utilization of an income approach. Id. Accordingly, the second district reversed the trial court's invalidation of the property appraiser's assessment and the trial court's reassessments of the taxpayer's property. Id. at 498. The court explained:
[t]he reason for the "no reasonable hypothesis" doctrine with respect to the judicial review of property appraiser decisions, is that there are numerous, and sometimes conflicting, appraisal theories or techniques for establishing an opinion as to real estate value. All of these theories and approaches have general recognition, and none are necessarily more appropriate than others for all cases. It is because there are so many well recognized approaches and techniques for arriving at an appraisal decision that the property appraiser's decision may be overturned only if there is no reasonable hypothesis to support it.
Daniel, 462 So.2d at 501.
If the evidence shows an appraiser properly considered the statutory factors, a trial court's finding that another method was *472 superior (or, as in this case, more "credible") is insufficient. Regardless of which method was "theoretically superior," the trial court is bound to uphold the appraiser's determination if it is supported by any reasonable hypothesis of legality. Id. No sufficient reason why the cost approach would not and did not yield a fair appraisal for this property has been established.
REVERSED and REMANDED.
DAUKSCH and ANTOON, JJ., concur.
NOTES
[1] Section 193.011 reads as follows:

In arriving at just valuation as required under s. 4, Art. VII of the State Constitution, the property appraiser shall take into consideration the following factors:
(1) The present cash value of the property, which is the amount a willing purchaser would pay a willing seller, exclusive of reasonable fees and costs of purchase, in cash or the immediate equivalent thereof in a transaction at arm's length;
(2) The highest and best use to which the property can be expected to be put in the immediate future and the present use of the property, taking into consideration any applicable judicial limitation or local or state land use regulation and considering any moratorium imposed by executive order, law, ordinance, regulation, resolution, or proclamation adopted by any governmental body or agency or the Governor when the moratorium or judicial limitation prohibits or restricts the development or improvement of property as otherwise authorized by applicable law. The applicable governmental body or agency or the Governor shall notify the property appraiser in writing of any executive order, ordinance, regulation, resolution, or proclamation it adopts imposing any such limitation, regulation, or moratorium;
(3) The location of said property;
(4) The quantity or size of said property;
(5) The cost of said property and the present replacement value of any improvements thereon;
(6) The condition of said property;
(7) The income from said property; and
(8) The net proceeds of the sale of the property, as received by the seller, after deduction of all of the usual and reasonable fees and costs of the sale, including the costs and expenses of financing, and allowance for unconventional or atypical terms of financing arrangements. When the net proceeds of the sale of any property are utilized, directly or indirectly, in the determination of just valuation of realty of the sold parcel or any other parcel under the provisions of this section, the property appraiser, for the purposes of such determination, shall exclude any portion of such net proceeds attributable to payments for household furnishings or other items of personal property.
[2] "Just value" is synonymous with "fair market value." Florida East Coast Ry. v. Department of Revenue, 620 So.2d 1051, 1055 (Fla. 1st DCA), review denied, 629 So.2d 132 (Fla.1993).
[3] In its Answer Brief, Lake Port argues that "where the property is income producing property, the income approach (that is, the seventh criteria of Section 193.011) cannot be rejected and must be given due consideration by the property appraiser." Lake Port cites Palm Corp. v. Homer, 261 So.2d 822 (Fla.1972), as support for its position. Lake Port's reliance on Palm Corporation is misplaced. The court in that case simply held that a property appraiser could not, in determining a property assessment, refuse to consider the income criterion solely because the taxpayer declined to supply his income figures. Palm Corporation, 261 So.2d at 823. The court went on to say, however, that if the appraiser is not given the information he requires, he must do the best he can and that the taxpayer will not be heard to complain that income was not adequately considered in addressing the property. Id. at 825.