813 So.2d 178 (2002)
Ervin HIGGS, Property Appraiser for Monroe County, Appellant,
v.
Lloyd A. GOOD, Jr., Appellee.
No. 3D01-2675.
District Court of Appeal of Florida, Third District.
March 20, 2002.
Clarification and Rehearing Denied April 24, 2002.
Dent & Cook and John C. Dent, Jr. and Sherri L. Johnson (Sarasota), for appellant.
Lloyd A. Good, Jr. (Lower Sugarloaf Key), in proper person.
*179 Before COPE, FLETCHER, and SORONDO, JJ.
FLETCHER, Judge.
Ervin Higgs, the Monroe County Property Appraiser [Appraiser] seeks the reversal of a final order setting aside the ad valorem tax assessment valuation for 1999 on real property of Lloyd A. Good, Jr. We reverse and reinstate the Appraiser's valuation.
In January, 2000 the Appraiser mailed out a form notice to non-homestead taxpayers in Monroe County requesting them to produce by April 30, 2000 the 1999 income and expense figures for their property, as well as their income tax returns for that year. The form notice explained that income data submitted after April 30 would not be considered for the current tax year and would be objected to if offered in a subsequent administrative or judicial proceeding. As section 193.011(7), Florida Statutes (2000) requires the Appraiser to take into consideration the income from the property, the Appraiser by seeking this data was rightfully carrying out a responsibility placed on him.
Good failed to comply with the notice. Instead he waited until after the Appraiser had carried out his task of placing a value on the various properties in Monroe Countyincluding Good's.[1] It is not difficult to discern thatin the absence of the enforcement of the submission deadlinea taxpayer could await notice of the assessed valuation and, if it is lower than fair-market value,[2] say nothing and enjoy the break; or if the valuation is higher than the owner likes, then submit the data and insist upon its use. This is precisely what Good did. After he received his valuation notice, he, being unhappy with it, submitted his income datain August, 2000. Ultimately Good filed suit, contending that the data he tardily submitted did not support the Appraiser's valuation.[3] At trial's conclusion, the court found that the Appraiser failed to properly consider the untimely submitted income data and set aside the assessment valuation on Good's property.
We conclude that it was error for the trial court to allow Good to defer the submission of the income data until it pleased him to submit it (tardily), then use the data to demand either administrative or judicial reduction of his property's tax assessment valuation. It is inappropriate for a taxpayer to conceal an ace-in-the-hole for subsequent play against an official who is attempting to carry out his duties. See Pier House Joint Venture v. Higgs, 555 So.2d 899 (Fla. 3d DCA 1990)(income data inadmissible because the property owner failed to reveal same in a timely fashion upon request of the property appraiser). If all taxpayers followed Good's example the Appraiser's office could be hamstrung.
The decision below is reversed and the Appraiser's 1999 tax assessment valuation on Good's property is ordered reinstated.
NOTES
[1] The Appraiser had two months after April 30 to complete the tax roll during which time period he valued 1,500 commercial properties. [T.18].
[2] The Appraiser's goal is to place on each property an annual assessment valuation equal to the property's fair market value. E.g., Valencia Center, Inc. v. Bystrom, 543 So.2d 214 (Fla.1989).
[3] Notwithstanding Good's failure to submit his income data prior to April 30, the Appraiser was still required to consider the income approach in placing a tax valuation on Good's property. The Appraiser accomplished this by applying such general income data as was applicable and available to him. See Palm Corp. v. Homer, 261 So.2d 822 (Fla.1972).